AMERICAN EXPRESS BANK LTD., Appellant, v UNIROYAL, INC., Respondent.

First Department, December 6, 1990

**APPEARANCES OF COUNSEL**

*Leo T. Crowley* of counsel *(Elaine M. Laflamme* with him on

the brief; *Winthrop, Stimson, Putnam & Roberts,* attorneys), for appellant.

*Joseph P. Moodhe* of counsel *(Debevoise & Plimpton,* attorneys), for respondent.

## OPINION OF THE COURT

Asch, J.

Defendant Uniroyal, Inc., entered into an agreement on October 22, 1981 to sell accounts receivable in Turkey to plaintiff American Express Bank Ltd. Uniroyal contracted to sell the right to receive payment for three types of accounts receivable satisfied by three different currencies, United States dollars, Deutsche marks and pounds sterling. This case involves only the dollar denominated account receivable. The amount set forth in the agreement for "Dollar Accounts Receivable" was $1,979,469.50. American Express agreed to purchase these accounts (and the Deutsche mark and pound sterling accounts receivable) at a price in United States dollars equal to 40% of their face value. As part of the agreement, Uniroyal warranted, *inter alia,* that "(i) it has legal and marketable title to the Accounts Receivable * * * (iii) the Accounts Receivable being assigned to Buyer are good, valid and subsisting Accounts Receivable which are eligible and qualified * * * for transfer, (iv) as to those Dollar Accounts Receivable which originally constituted foreign currency claims, SELLER duly elected * * * to receive payment in U.S. dollars, such election remains in full force and effect and SELLER is entitled to receive a total of U.S. $1,979,469.50 for the Dollar Accounts Receivable; and with respect to all of the Accounts Receivable, SELLER is entitled, on and as of October 21, 1981, to elect to receive payment on the Accounts Receivable in the Turkish Lira equivalent of the face amounts thereof".

Prior to entering this agreement, Uniroyal had elected under Turkish law to convert certain of the obligations underlying the accounts receivable from Dutch guilders and Belgian francs into United States dollars.

Contrary to expectations, the Turkish Central Bank did not convert the dollar accounts receivable directly into Turkish lira for the full amount of $1,979,469.50. The bank differentiated those dollar sums as to their sources and converted the amounts which came from Dutch guilders and Belgian francs into lira directly from those currencies rather than from

United States dollars causing a shortfall in the dollar accounts receivable.

The parties agree that there is no issue of fact. The only issue is the interpretation of the phrase "face amount". If the phrase refers to accounts receivable in United States dollars, then Uniroyal was never entitled to receive the Turkish lira equivalent of the United States dollar amount, the warranty was not true and Uniroyal is liable under the express covenant. If the phrase "face amount" refers to Dutch guilder and Belgian franc amounts, then the warranty is true, and Uniroyal is not liable.

In interpreting a contract, the intent of the parties governs *(Sheets v Sheets,* 22 AD2d 176, 180). A contract should be construed so as to give full meaning and effect to all of its provisions *(Trump-Equitable Fifth Ave. Co. v H.R.H. Constr. Corp.,* 106 AD2d 242, 244, *affd* 66 NY2d 779; *Integrated Sales v Maxell Corp.,* 94 AD2d 221, 227). Words and phrases are given their plain meaning *(Mazzola v County of Suffolk,* 143 AD2d 734, 735). Rather than rewrite an unambiguous agreement, a court should enforce the plain meaning of that agreement *(see, CCG Assocs. I v Riverside Assocs.,* 157 AD2d 435, 440).

Where the intent of the parties can be determined from the face of the agreement, interpretation is a matter of law and the case is ripe for summary judgment *(Pharmaceutical Horizons v Sterling Drug,* 127 AD2d 514, 515, *lv dismissed* 69 NY2d 984; *Levin v Hoffman Fuel Co.,* 94 AD2d 640, 641, *affd* 60 NY2d 665). On the other hand, if it is necessary to refer to extrinsic facts, which may be in conflict, to determine the intent of the parties, there is a question of fact, and summary judgment should be denied *(IBM Credit Fin. Corp. v Mazda Motor Mfg. [USA] Corp.,* 152 AD2d 451; *Leighton's Inc. v Century Circuit,* 95 AD2d 681; *Integrated Sales v Maxell Corp., supra,* 94 AD2d, at 227).

Uniroyal argues, and the IAS court agreed, that the phrase "face amounts" refers to amounts in Belgian francs and Dutch guilders. However, this interpretation was reached only with reference to extrinsic facts, i.e., the terms of the Turkish supplemental decree, which is dehors the record and which appears to have been quoted only in part in a memorandum submitted at nisi prius. Uniroyal also presents extrinsic matter, i.e., its contract counsel's factual allegations as to the activities and intent of the parties in drafting the agreement

to buttress its position. Resort to either of these sets of extrinsic facts is inappropriate, however, because the language of the contract is plain and unambiguous.

The key phrase is "to elect to receive payment on the Accounts Receivable in the Turkish lira equivalent of the face amounts *thereof* and in furtherance *thereof*" (emphasis added). The use of "thereof" unequivocally refers the phrase "face amount" back to the phrase "Accounts Receivable". Because that phrase is in capitals, it should be interpreted according to the specific definition in the contract which is in terms of United States dollars, Deutsche marks, and British pounds sterling. Nowhere in this contract definition is there any reference to any other currency or anything to indicate that "Accounts Receivable" can be interpreted to mean underlying invoices or statements that may be in some other foreign currency. Face amount of the accounts receivable must be in one of these three specified currencies. Since it is undisputed that the receivables in question are from the "U.S. dollars" portion of the schedule, the warranty in question can be interpreted only as a warranty that Uniroyal was entitled to receive the Turkish lira equivalent of the receivable valued in United States dollars. They were not and therefore the warranty was not true.

While the IAS court was correct that accounts receivables refers to British pound sterling and Deutsche marks, in addition to United States dollars, this is not material, since the agreement refers to specific accounts receivable and, as noted, only United States dollar accounts receivables are at issue.

While the IAS court and Uniroyal find it significant that the phrase "face amounts" in this warranty contrasts with the phrase "face value" in other warranties of the subject contract, the differences strengthen the position of American Express.

According to Black's Law Dictionary (5th ed), face amount is the amount "shown by the mere language employed". "Face value" is the "value stated on the face". The phrases are not precisely synonymous. "Face amount" is a literal concept— what the words or numbers on the printed page say. Face value is an abstract concept—what, according to those words or numerals, the document is worth. This interpretation is borne out by those cases that use both phrases in a manner

that suggests two different meanings *(see, e.g., Matter of New York Tit. & Mtge. Co.,* 278 NY 486; *Lund's, Inc. v Chemical Bank,* 870 F2d 840, 853; *Office of Comptroller Gen. v International Promotions & Ventures,* 618 F Supp 202, 203).

This distinction is also borne out in the way that the two phrases are used in the contract at bar. Where "face amount" is used, it is a reference to the statement on the document— what the document says. When "Face Value" is used, it is a reference to the amount that American Express can recover— what the receivables are worth. Any other interpretation would require disregard of the plain meaning of the two phrases. Thus, under its plain meaning, the warranty clause in issue refers to the face amount of the receivables in United States dollars.

The amount of the dollar accounts receivable is set forth many times in the agreement and accompanying assignment as United States $1,979,469.50. Uniroyal's warranty extended to the conversion of *that* amount into Turkish lira as of the date of the agreement, and consequently it remains liable for any shortfall according to the terms of its warranty.

Accordingly the order of the Supreme Court, New York County (Shirley Fingerhood, J.), entered on January 23, 1990, which denied the motion of plaintiff American Express Bank Ltd. for summary judgment and granted the cross motion of defendant Uniroyal, Inc. for summary judgment dismissing the complaint should be reversed, on the law, the motion by plaintiff granted and the cross motion by defendant denied with costs and disbursements payable by defendant, and the matter remanded to the Supreme Court for settlement of judgment upon notice including an appropriate calculation of interest.

Ross, J. P., Rosenberger, Kassal and Wallach, JJ., concur.

Order, Supreme Court, New York County, entered on January 23, 1990, unanimously reversed, on the law, the motion by plaintiff granted and the cross motion by defendant denied with costs and disbursements payable by defendant, and the matter remanded to the Supreme Court for settlement of judgment upon notice including an appropriate calculation of interest.