PULASKI MATERIALS COMPANY, INC., Plaintiff,

v.

MILESTONE MATERIALS, INC., as successor to the General Crushed Stone Company, Defendant.

No. 97–CV–7028.

United States District Court, W.D. New York.

Sept. 29, 1998.

Barry L. Radlin, Amherst, NY, for Plaintiff.

Kevin C. Murphy, Devorsetz, Stinziano, Gilberti, Heintz & Smith, P.C., Syracuse, NY, Richard Moore, Magavern, Magavern & Grimm, Buffalo, NY, for Defendant.

## DECISION AND ORDER

SIRAGUSA, District Judge.

Before the Court are the defendant's objections to the Report and Recommendation of United States Magistrate Judge Carol E. Heckman, which recommended that this Court grant the plaintiff's cross motion for partial summary judgment and deny the defendant's motion for the same relief. The Court has reviewed the record de novo, and for the reasons that follow, it adopts Magistrate Heckman's Report and Recommendation in its entirety.

## BACKGROUND

The parties do not object to the factual findings contained in Magistrate Judge Heckman's Report and Recommendation. Therefore, this Court adopts those findings, and will not repeat them here. It is sufficient to note the following: This action involves the interpretation of a contract between the plaintiff, a supplier of crushed stone, and the defendant, a manufacturer of hot-mix asphalt products. At the time of the making of this contract, the plaintiff was engaged in the quarrying, processing, and supplying of crushed stone from its limestone quarry in Great Bend, New York. Also at that time, the defendant desired to construct and operate a hot-mix asphalt plant on property owned by the plaintiff, which plant would be supplied with crushed stone produced by the plaintiff. The parties executed a written agreement on November 2, 1992. The contract is for a term of ten years, and provides, in relevant part:

> WHEREAS, [the plaintiff] is presently producing Crushed Limestone at its quarry at Great Bend, New York and;

> WHEREAS, [the defendant] desires to construct and operate a hot-mix asphalt plant on property owned by [the plaintiff] in Great Bend, New York and;

> WHEREAS, [the defendant] desires to consume or market a minimum amount of 300,000 tons per year of Crushed Stone from the Pulaski Quarry.

> \*   \*   \*   \*   \*   \*

> WHEREAS, [the plaintiff] desires to produce and supply to [the defendant] the quantities as outlined above. Recognizing this quantity of material would consume most of the production capabilities of this facility, [the plaintiff] would discontinue marketing materials to any other customers during the life of the Agreement and [the defendant] would market all materials produced by [the plaintiff].

> NOW THEREFORE, in consideration of the premises and the covenants and conditions hereinafter set forth, the parties hereto agree, as follows:

> \*   \*   \*   \*   \*   \*

> 2. *Purchase of Requirements From [the Plaintiff] By [the Defendant]:*

> [The defendant] agrees that throughout the term of this Agreement and any renewal thereof, it will purchase from [the plaintiff] all its requirements of crushed stone for its asphalt plants at the price hereinafter set forth and negotiated.

> 3. *Purchase Price For Stone Requirements:*

> a. For the year November 1, 1992 to October 31, 1993, [the defendant] shall pay [the plaintiff] according to the following schedule:

The above amounts are based on sales estimates and this agreement is not a "take-or-pay" contract. However, sales over a three (3) year period shall total 900,000 tons.

\* \* \* \* \* \*

5. *[The plaintiff's] Right To Complete Existing Contracts:*

a. [The plaintiff] has the right to fulfill any previous obligations for the supplying of materials to existing customers.

b. [The plaintiff] will enter into no additional agreements or contracts for the supplying of materials during the term of this Agreements.

6. *Provision of [the defendant's] Requirements by [the plaintiff]:*

a. [The plaintiff] agrees that, insofar as its total capacity will permit and barring mechanical failure and/or acts beyond its control, it will furnish [the defendant] with all of its crushed stone requirements at the prices hereinabove specified (or as renegotiated pursuant hereto) for the operation of its asphalt plants.

\* \* \* \* \* \*

8. *Term of Agreement And Right To Renew:*

a. This agreement shall be in effect for the period of November 1, 1992 through October 31, 2002,

\* \* \* \* \* \*

10. *[The defendant's] Rights To Seek Requirements From Other Sources:*

In the event that [the plaintiff] is unable to supply [the defendant's] requirements for stone of suitable quality, [the defendant] may obtain stone for its hot-mix asphalt plants from other sources until [the plaintiff] can reasonably satisfy [the defendant's] requirements.

The agreement was negotiated and signed by Thomas H. Barry, Vice President and General Manager of General Crushed Stone Company, on behalf of the plaintiff, and by Richard E. Garman, President of Pulaski Materials Corp., on behalf of the defendant.

In addition to the agreement, the parties submitted various extrinsic materials to the Court. The plaintiff submitted a letter from Mr. Barry to Mr. Garman, written approximately three years after the contract was made. The letter discusses modifying the existing agreement, and states, in relevant part, that the defendant wanted to "[r]educe the annual tonnage requirements from 300,-000 tons to 250,000 for each succeeding year (years 2 thru 10) of the agreement." The letter continues:

> From the standpoint of lengthening the agreement to the original 3 million ton total but using a reduced 250,000 ton annual requirement, I would like to propose adding 2 extra years with the following tonnage requirements over the 12 years:
>
> Year 1—200,000 tons
>
> Years 2 thru 11—250,000 tons per year
>
> Year 12—300,000 tons
>
> Total of the 12 year agreement = 3 million tons

The plaintiff also submitted affidavits from both Garman and Barry. Garman's affidavit stated, in relevant part, that his understanding of the agreement was that it "provided for a minimum purchase of 3 million tons over 10 years." Barry, who had since been terminated by the defendant, concurred with Garman's understanding of the agreement, and stated that "[t]he phrase "sales over a three (3) year period shall total 900,000 tons," appearing in the same Paragraph 3 as the annual sales estimate of 300,000 tons of various crushed stone types, clearly means 900,000 tons as a total for each three year period of the agreement; when one three year period ends, a new one begins." The defendant also submitted extrinsic evidence, in the form of an affidavit from Patrick Fitzgerald, who states that at the time of the agreement, he was "serving as Manager of Human Resources and labor counsel for the Northeast Division of Beazer Materials and Services, Inc.," which is a corporation somehow connected with the defendant. Mr. Fitzgerald claims that it was his suggestion to insert the language "this is not a take or pay contract" into the agreement, and that it is his understanding that the plain language of the agreement establishes "a one time only cumulative minimum purchase of 900,000 tons over the first three years of a ten year

agreement." Mr. Barry, in his affidavit, admits that at the time of the agreement, he "had discussions with Pat Fitzgerald, an attorney in our Easton office, on the agreement wording."

On November 5, 1997, United States Magistrate Judge Carol E. Heckman issued a Report and Recommendation on the applications for partial summary judgment which had been referred to her by the Honorable William M. Skretny, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B). That report recommended that the plaintiff's cross motion for partial summary judgment [# 17] be granted, and that the defendant's motion for partial summary judgment [# 11] be denied. The defendant filed its objections on November 19, 1997, and the plaintiff filed its response to those objections on December 8, 1997. By Order dated December 15, 1997, Judge Skretny transferred this case to the undersigned.

The defendant asserts three objections to the report and recommendation. First, it alleges the magistrate incorrectly found the contract to be ambiguous. Second, it alleges that the extrinsic materials which the magistrate relied upon would not resolve any such ambiguity. Third, it alleges the magistrate applied the wrong legal standard to the plaintiff's cross motion, since she failed to consider the evidence in the light most favorable to the defendant and failed to draw all reasonable inferences in the defendant's favor. Specifically, the defendant contends that the affidavit of Mr. Fitzgerald creates a triable issue of fact as to the parties' intent, thereby precluding summary judgment.

## ANALYSIS

Pursuant to 28 U.S.C. § 636(b)(1)(C), "the court shall make a de novo determination of those portions of the [magistrate's] report ... or recommendations to which objection is made." Upon completion of that de novo review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.*

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the plead-ings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 Moore's Federal Practice, § 56.11[1][a] (Matthew Bender 3d ed.). Once that burden has been established, the burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To carry this burden, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy,* 988 F.2d 303, 308 (2d Cir.1993).

Summary judgment concerning the proper construction of a contract may be granted where the contract conveys a "definite and precise meaning absent any ambiguity." *Seiden Associates, Inc. v. ANC Holdings, Inc.,* 959 F.2d 425, 428 (2d Cir.1992). A contract "is ambiguous if it is reasonably susceptible to more than one interpretation." *Burger King Corp. v. Horn & Hardart Co.,* 893 F.2d 525, 527 (2d Cir.1990). Parol evidence is admissible to help clarify an ambiguous contract. *Id.* Where there is conflicting extrinsic evidence, summary judgment is not appropriate, however summary judgment may be granted where the extrinsic evidence does not conflict. *Id.* at 528.

With regard to the defendant's first objection, the Court finds that Magistrate Judge Heckman properly concluded that the

contract is ambiguous. While much of the language in the contract can be read as requiring the defendant to purchase only as much crushed stone as it requires, other language in the agreement clearly requires the defendant to purchase a minimum amount of stone. The contract is made more ambiguous by the statement that "sales over a three (3) year period shall total 900,000 tons," because the agreement recites that the defendant wishes to purchase at least 300,000 tons of stone per year and the plaintiff desires to provide that amount. Moreover, the agreement recites that in order for the plaintiff to supply the defendant with its desired amount of stone, it would have to "discontinue marketing materials to any other customers during the life of the Agreement, and [the defendant] would market all materials produced by [the plaintiff]." Thus, while the contract explicitly refers to sales "over a three year period," (emphasis supplied), it can be reasonably understood to mean sales "over *any* three year period" during the term of the contract. Since the contract is reasonably susceptible to more than one interpretation, it is ambiguous.

■ With regard to the defendant's second and third objections, the Court also finds that Magistrate Judge Heckman properly concluded that the extrinsic materials contained in the record resolve any apparent ambiguity in the agreement, and that no triable issue of fact remains. Since Fitzgerald's affidavit conflicts with the affidavits of Barry and Garman, summary judgment would, at first, appear to be inappropriate. However, as Magistrate Heckman concluded, Fitzgerald's affidavit "is not probative of the precise issue before this court," because it is based upon his review and revision of a draft of the contract, and not upon the final contract itself. Moreover, it appears that the draft that Fitzgerald reviewed did not contain the statement that "sales over a three (3) year period shall total 900,000 tons," and it does not appear from his affidavit that he discussed this term with Mr. Barry. Thus, Magistrate Judge Heckman properly discounted Fitzgerald's affidavit. This result is consistent with the holding in *Burger King Corp.*, 893 F.2d at 528. There, the Court held that the affidavit of an in-house counsel

for Burger King, which conflicted with the opposing party's extrinsic evidence, raised a triable issue of fact even though the in-house counsel "was not involved in the major part of the negotiations concerning the [contract]."*Id.* However, unlike the in-house counsel in *Burger King*, Fitzgerald apparently was not involved at all in the negotiation of the contract at issue. His role was limited to offering a suggestion to Barry regarding a draft of the agreement. *Burger King* is further distinguishable from the instant case because, unlike Mr. Fitzgerald's affidavit, the affidavit of Burger King's in-house counsel was supported by the deposition testimony of another individual.

■ Because Fitzgerald's affidavit must be disregarded, the affidavits of Barry and Garman are the only remaining extrinsic evidence of the parties' intent at the time of the making of the agreement. "[A] court appropriately may dispose of a contract interpretation dispute on summary judgment, although the contract is ambiguous, if ... there is relevant extrinsic evidence, but such evidence is so one-sided that it does not create a genuine issue of material fact." *Nycal Corp. v. Inoco PLC*, 988 F.Supp. 296, 299–300 (S.D.N.Y.1997). Barry and Garman were the persons who actually negotiated the contract, and their affidavits are uncontroverted. Therefore, the plaintiff has demonstrated that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. The Court has reviewed the evidence in the light most favorable to the defendant and has drawn all permissible inferences in the defendant's favor, and has concluded that on the record before it, no reasonable trier of fact could find for the defendant.

## CONCLUSION

Accordingly, the Report and Recommendation [# 24] of the Honorable Carol E. Heckman, United States Magistrate Judge, is hereby accepted and adopted in its entirety. The plaintiff's motion for partial summary judgment [# 17] is granted, and the defen-

dant's motion for partial summary judgment [# 11] is denied.

So ordered.

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

This matter was referred to the undersigned by Hon. William M. Skretny, to hear and report, in accordance with 28 U.S.C. § 636(b)(1)(B). Defendant has moved, and plaintiff has cross-moved, for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, it is recommended that plaintiff's motion be granted. and that defendant's motion be denied.

### *BACKGROUND*

Plaintiff Pulaski Materials Company is in the business of quarrying, processing and supplying crushed stone from its limestone quarry in Great Bend (near Watertown), New York. On November 2, 1992, plaintiff entered an agreement with the General Crushed Stone Company of Easton, Pennsylvania (the "Agreement")(see Item 1, Ex. A). Defendant Milestone Materials. Inc. of Pittsburgh, Pennsylvania is the corporate successor of General Crushed Stone.

The Agreement provides as follows:

WHEREAS, Pulaski Materials is presently producing Crushed Limestone at its quarry at Great Bend, New York and;

WHEREAS, General desires to construct and operate a hot-mix asphalt plant on property owned by Pulaski in Great Bend, New York and;

WHEREAS, General desires to consume or market a minimum amount of 300.000 tons per year of Crushed Stone from the Pulaski Quarry.

\*     \*     \*     \*     \*     \*

WHEREAS, Pulaski desires to produce and supply to General the quantities outlined above. Recognizing this quantity of material would consume most of the production capabilities of this facility, Pulaski would discontinue marketing materials to any other customers during the life of the Agreement and General would market all materials produced by Pulaski. . . .

NOW THEREFORE, in consideration of the premises and the covenants and conditions hereinafter set forth, the parties hereto agree, as follows:

1. *Definitions:*

For the purposes and throughout this Agreement, the following definitions apply:

a. "Asphalt plants" shall mean and refer to the hot-mix asphalt plants operated by General on property owned by Pulaski in Great Bend, Jefferson County, New York.

2. *Purchase of Requirements From Pulaski by General:*

General agrees that throughout the term of this Agreement and any renewal hereof, it will purchase from Pulaski all its requirements of crushed stone for its asphalt plants at the price hereinafter set forth and negotiated.

3. *Purchase Price For Stone Requirements:*

a. For the year November 1, 1992 to October 31, 1993, General shall pay Pulaski according to the following schedule:

| Tons | Description | Price |
|---|---|---|
| 60,000 | HMA aggregate | @4.50 |
| 120,000 | –2" Crusher run | @2.75 |
| 120,000 | Sized aggregate | @4.50 |
| Total 300,000 | | $1,140,000.00 |

The above amounts are based on sales estimates and this agreement is not a "take-or-pay" contract. However sales over a three (3) year period shall total 900,000 tons.

\*     \*     \*     \*     \*     \*

8. *Terms of Agreement and Right To Renew:*

a. his agreement shall be in affect for the period of November 1, 1992 through October 31, 2002.

b. So long as General maintains its asphalt plants (as defined herein), it shall have the option to renew this Agreement for two additional five (5) year terms. . . .

(Item 1, Ex. A). The Agreement was signed by Thomas M. Barry, then Vice President and General Manager of General Crushed

Stone's New York operations, and Richard E. Garman, President of Pulaski Materials.

In early May of 1996, plaintiff received a letter from Gary A. Skidmore, President of BenchmarkNew York,[1] which stated as follows: ·

> The requirements for aggregates and hot mix asphalt in the Great Bend/Watertown, New York market have declined dramatically from the levels of demand experienced immediately preceding the execution of the Agreement. As requirements have fallen, market pricing has become so competitive that we find ourselves in the position of not being able to sell or consume the approximate quantities set forth in the Agreement. This is not only an untenable business position, but it could pose serious legal issues in the pricing arena, if we were to pursue volume at prices that were below our cost.
>
> [Defendant] has made good faith efforts to purchase at the levels estimated for the requirements in the first three years. A lump sum purchase of materials was made last fall fulfilling our one time estimate to have sales over "a three year period" (emphasis added) at 900,000 tons (after reducing the requirement by 100.000 tons to compensate for volumes sold in the first year for [plaintiff]'s account). Incidentally, the majority of that material remains unsold and in inventory.
>
> Consequently. I regret to inform you that, in view of the foregoing, [defendant] will have no material requirements from [plaintiff] under the Agreement until further notice. We do not anticipate any requirements for the remainder of 1996. You will certainly want to curtail your production levels to mitigate the impact of this disastrous market which presents us both with circumstances beyond our reasonable control.

(Item 17, Ex. A).

On January 15.1997, plaintiff filed this diversity action seeking damages for breach of contract. Plaintiff also seeks a declaration as to whether the contract created a "one-time obligation to purchase 900,000 tons of crushed stone over the first three years of the Agreement" (Item 1, ¶ 34), as contended by defendant and as expressed in the May 1, 1996 letter from Mr. Skidmore. On March 14.1997, defendant answered the complaint and asserted a counterclaim seeking a declaration that it "is not required to purchase 300,000 tons of crushed stone per year or 900,000 tons of crushed stone over any three year period other than the initial period running from November 1.1992 through October 31, 1993" (Item 3, ¶ 49).

Defendant moves for partial summary judgment in its favor on the declaration of contractual rights and obligations sought in its counterclaim. Plaintiff cross-moves for partial summary judgment in its favor on the declaration of contractual rights and obligations sought in its third cause of action. For the reasons that follow. it is recommended that plaintiffs motion be granted. and that defendant's motion be denied.

## DISCUSSION

■ Summary judgment is appropriate if the pleadings, discovery materials, and affidavits on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). By its terms, Rule 56 contemplates use of summary judgment as an appropriate device "to obtain a declaratory judgment" in a contract case. Fed.R.Civ.P. 56(a); *see, e.g. Schering Corp. v. Home Insurance Co.*, 712 F.2d 4 (2nd Cir.1983); *Village of Morrisville Water & Light Dept. v. U.S. Fidelity & Guar.*, 775 F.Supp. 718, 722 (D.Vt.1991).

Under New York law, which the parties agree applies to this diversity action, where contract language is unambiguous on its face, summary judgment is an appropriate means of determining as a matter of law the parties'

---

**1.** According to the motion papers, Benchmark Materials is a division of Cornerstone Construction and Materials. Inc., the corporate parent of defendant Milestone Materials. Inc. (see Fitzgerald Aft., Item 20. ¶ 1). At the time of the May 1, 1966 letter from Mr. Skidmore. defendant's management had identified "BenchmarkNew York" as the corporate successor to General Crushed Stone, apparently in error (see Item 18. p. 4. n. 1). The parties agree that any such error is inconsequential to issues raised by this lawsuit (id.).

rights and obligations under the contract. *Alternative Thinking Systems, Inc. v. Simon & Schuster, Inc.*, 853 F.Supp. 791, 795 (S.D.N.Y.1994)(citing *American Express Bank, Ltd. v. Uniroyal, Inc.*, 164 A.D.2d 275, 562 N.Y.S.2d 613.614 (1st Dept.1990), appeal denied 77 N.Y.2d 807, 569 N.Y.S.2d 611, 572 N.E.2d 52 (1991)). However, if the contract language is ambiguous on its face, the court must refer to extrinsic evidence to determine the intent of the parties. *Seiden Associates, Inc. v. ANC Holdings, Inc.*, 959 F.2d 425. 428 (2d Cir.1992). If the extrinsic evidence leads to conflicting interpretations of the contract. a genuine issue of material fact remains and summary judgment must be denied "unless, viewing the evidence in a light most favorable to the nonmovant and resolving all doubts in its favor, no reasonable trier of fact could find against the movant." *Christiania General Insurance Corp. v. Great American Insurance Co.*, 979 F.2d 268, 274 (2d Cir. 1992); *see also Burger King Corp. v. Horn & Hardart Co.*, 893 F.2d 525, 528 (2d Cir.1990).

■ Thus, the threshold question for the court is whether the contract language at issue is ambiguous on its face. *See Alternative Thinking Systems, supra; see also W.W.W. Associates, Inc. v. Giancontieri*, 77 N.Y.2d 157, 565 N.Y.S.2d 440, 566 N.E.2d 639 (1990). "Ambiguous" contract language is defined as that which is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Eskimo Pie Corp. v. Whitelawn Dairies, Inc.*, 284 F.Supp. 987, 994 (S.D.N.Y.1968), *quoted in Seiden Associates, supra*, 959 F.2d at 428; see also *Walk–In Medical Centers, Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir.1987). Conversely, contract language is not ambiguous

when it has "a definite and precise meaning, unattended by danger of misconception in the purport of the (contract) itself, and concerning which there is no reasonable basis for a difference in opinion." *Breed v. Insurance Co. of North America*, 46 N.Y.2d 351, 355, 413 N.Y.S.2d 352, 385 N.E.2d 1280 (1978), *quoted in Seiden Associates, supra: see also Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir.1989).

In this case, the parties urge differing interpretations of the language contained in section 3(a) of the contract, which provides that "sales over a three (3) year period shall total 900.000 tons." Defendant claims that this language, read in the context of the entire Agreement. expresses the parties' clear intent that General Crushed Stone would purchase 900.000 tons of stone during the initial three-year period covered by the contract. i.e., from November 1, 1992 through October 31, 1995, and that for the remainder of the contract term General Crushed stone would be obligated to purchase from plaintiff only the amounts of store that it required.

Plaintiff claims that the language of section 3(a) does not create a "one-time-only" three-year obligation on the part of defendant to purchase 900,000 tons of stone, but instead applies throughout the life of the Agreement. In other words, plaintiff urges the court to interpret the contract as requiring defendant to purchase at least 900,000 tons of crushed stone over any three-year period during the contract's ten-year term.

An objective reading of this disputed language, considered in the context of the entire Agreement and in light of the customary usage of the term "requirements contract,"[2] suggests that the language is reasonably susceptible to more than one interpretation. Section 2 of the Agreement expressly provides that defendant "will purchase from [plaintiff] all its requirements of crushed

---

2. A "requirements contract" is a contract which calls for one party to furnish materials or goods to another party the extent of the latter's requirements in business. *Cyril Bath Co. v. Winters Industries*, 892 F.2d 465.467 (6th Cir.1989); *see also R.A. Weaver & Associates, Inc. v. Asphalt Construction, Inc.*, 587 F.2d 1315 (D.C.Cir.1978). N.Y.U.C.C. § 2–306(1) sets forth the standard for a requirements contract. as follows:

A term which measures the quantity by the output of the seller or the requirements of the buyer means Such actual output or requirements as may occur in good faith, except that no quantity unreasonably disproportionate to any stated estimate or in the absence of a stated estimate to any normal or otherwise comparable prior output or requirements may be tendered or demanded.

stone for its asphalt plants". Section 3(a) of the Agreement then establishes the purchase price for 300,000 tons of crushed stone for the year commencing November 1.1992. and expressly states that the amounts are based on sales estimates and not on a "take-or-pay" basis. This provision is susceptible to the reasonable reading that the Agreement was intended to obligate General Crushed Stone to purchase only the amount of stone it required for its operation of the Great Bend asphalt plants, and not to commit itself to purchasing an average of 900,000 tons if stone over any three-year period during the ten-year life of the Agreement.

However, this provision is subject to the express limitation that "sales over a **three (3) year period** shall total 900,000 tons" (emphasis added). The Agreement provides no specific starting and ending dates for the three-year period, no definition of the term and no explanation as to how the three-year period is to be measured or applied. When considered in conjunction with the language in the "WHEREAS" provisions of the Agreement stating that General Crushed Stone "desires to consume or market a minimum amount of 300,000 tons per year of Crushed Stone from the Pulaski Quarry ...," and that plaintiff "would discontinue marketing materials to any other customers during the life of the Agreement ...," the provision can reasonably be interpreted to mean that defendant was obligated to purchase 900.000 tons of stone over any three-year period throughout the ten-year term of the contract.

The very nature of this dispute amplifies the ambiguity of the "three-year period" language. Of course. "[t]he language of a contract is not made ambiguous simply because the parties urge different interpretations." *Seiden Associates, supra,* 959 F.2d at 428. However, as the discussion above suggests. to accept either party's interpretation of the disputed language "would leave [other] contractual clauses meaningless." *Two Guys from Harrison–N.Y., Inc. v. S.F.R. Realty Associates,* 63 N.Y.2d 396 403, 482 N.Y.S.2d 465, 472 N.E.2d 315 (1984), *quoted In Alternative Thinking Systems, supra,* 853 F.Supp. at 795: *see also American Express Bank, supra,* 562 N.Y.S.2d at 614.

Accordingly, I find that the disputed language of the Agreement is ambiguous. The court must therefore look to extrinsic evidence to determine whether a material factual dispute exists as to the parties' intent.

Plaintiff has submitted the affidavits of Mr. Garman and Mr. Barry, the two individuals who negotiated, drafted and signed the Agreement. Mr. Barry was discharged by General Crushed Stone in March, 1996, and is no longer employed by defendant. He states in his affidavit as follows:

The phrase "sales over a three (3) year period shall total 900,000 tons," appearing in the same Paragraph 3 as the annual sales estimate of 300,00[0] tons of various crushed stone types, clearly means 900,000 tons as a total for each three year period of the agreement; when one three year period ends, a new one begins. The sentence "[t]he above amounts are based on sales estimates and this agreement is not a take or pay contract." also within Paragraph 3, means that, while each three year total of 900,000 tons must be met, the 300.000 ton estimate need not be met during any one year of the three year clusters so long as the three year total is met.

(¶ 8 of Barry Aff., attached to Item 17).

In addition, Mr. Barry states in his affidavit that in 1995, while still employed by General Crushed Stone, he contacted Mr. Garman to discuss modification of the Agreement. On October 12, 1995, Mr. Barry wrote Mr. Garman a letter in which he stated his understanding of the proposed modifications as follows:

1. Allow General Crushed Stone credit for 100,000 tons of stone sold by Pulaski during the first year (November 1992 thru October 1993) since that tonnage existed in the market but was already under contract by Pulaski at the time when we signed the agreement.

2. Reduce the annual tonnage requirement from 300,000 tons to 250.000 for each succeeding year (years 2 thru 10) of the agreement.

[T]he payment for the 100,000 tons from the first year is deferred and the reduction

of annual tonnage to 250,000 tons doesn't take place until years 4 thru 10.

\* \* \* \* \* \*

... I would appreciate the opportunity to discuss the possibility of a lower price for material to make us as competitive as possible from Great Bend. Market conditions have made it extremely difficult to be competitive with the prices in the agreement and any volume discount pricing available to us would be helpful in moving the Great Bend material. One suggestion is a percentage discount on volumes of greater than 5,000 tons to a specific project or a higher percentage discount on stone volumes greater than 10,000 tons.

From the standpoint of lengthening the agreement to the original 3 million ton total but using a reduced 250,000 ton annual requirement. I would like to propose adding 2 extra years with the following tonnage requirements over the 12 years:

Year 1—200,000 tons

Years 2 thru 11—250,000 tons per year

Year 12—300,000 tons

Total of the 12 year agreement = 3 million tons

(item 17, Ex. B).

This evidence is corroborated by Mr. Garman's affidavit, in which he states that the intent of the parties was to enter into a long-term joint venture whereby General Crushed Stone would purchase from plaintiff all of the crushed stone required for the operation of a hot-mix asphalt plant on plaintiff's property, in return for General's promise to purchase an average of 300,000 tons of stone per year throughout the term of the Agreement (see German Aff., attached to Item 17).

The only extrinsic evidence of intent submitted by defendant is the affidavit of Patrick Fitzgerald, Esq., Corporate Director of Human Resources for Benchmark Materials. which is a division of defendant's corporate parent. Mr. Fitzgerald states that in October of 1992 he was the Manager of Human Resources and labor counsel for Beazer Materials and Services, Inc., which is apparently another of defendant's corporate relatives. Mr. Fitzgerald was contacted by Mr. Barry to review a draft of the General Crushed Stone/Pulaski Agreement. Mr. Fitzgerald inserted the "take-or-pay" language immediately after the pricing schedule set forth in section 3(a). He states that his "understanding of the plain language of the Agreement is that General Crushed Stone and Pulaski Materials entered into a requirements contract with a one time only cumulative minimum purchase of 900,000 tons over the first three years of a ten year agreement" (Item 20, ¶ 13).

This opinion is entitled to little weight in the face of the sworn statements of both Mr. Barry and Mr. Garman, the signatories and principal actors for the parties. ·See American Express Bank. Ltd. v. Uniroyal, Inc., supra., 164 A.D.2d at 277, 562 N.Y.S.2d at 614 ("In interpreting a contract, the intent of the parties governs.")(citing Sheets v. Sheets, 22 A.D.2d 176, 180, 254 N.Y.S.2d 320 (1st Dept.1964)); see also PaineWebber, Inc. v. Bybyk, 81 F.3d 1193, 1199 (2d Cir.1996). Moreover, a close reading of Mr. Fitzgerald's self-serving opinion shows its limitations. Mr. Fitzgerald quotes in paragraph 9 of his affidavit the language contained in the draft of paragraph 3. of the Agreement, which he revised. This draft did not contain the language at issue here-i.e., the last sentence stating, "[h]owever, sales over a three (3) year period shall total 900,000 tons." Not surprisingly, he does not express any opinion as to the meaning of that language because apparently he never saw it. Accordingly, his opinion as to what he thought a prior, materially different draft meant is not probative of the precise issue before this court.

There is no other extrinsic evidence in the record to suggest that the Agreement could be interpreted to require defendant to purchase only the amount of stone it may need for its hot-mix asphalt operations at Great Bend, even if it should need none at all, or the conclusion that the three-year/900,000 ton requirement was meant to apply only for the first three years of the contract term.

On the other hand, the sworn statements contained in the Garman and Barry affidavits. supported by the matters stated in Mr. Barry's October 12.1995 letter, provide convincing evidence of the parties' intent. When

read in the context of the entire Agreement, this evidence establishes that General Crushed Stone promised to purchase from plaintiff a minimum of three million tons of stone over a ten-year period, measured either by a yearly average of 300,000 tons or a three-year total of 900.000 tons over any three years. In return, plaintiff promised to lease property to General for its hot-mix asphalt plants for $1.00 a year, and to suspend its crushed stone sales to all other customers in order to ensure that it would meet General's supply requirements.

Based on the above. I find that no reasonable trier of fact could find in favor of defendant's interpretation of the contract language. Accordingly, no genuine issue of material fact remains as to the intent of the parties and partial summary judgment in favor of plaintiff is appropriate declaring the rights and obligations of the parties to the Agreement as set forth herein.

### CONCLUSION

For the foregoing reasons, it is recommended that plaintiff's motion for partial summary judgment (**Items 17**) be granted, and defendant's motion for partial summary judgment (**Item 11**) be denied.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED,** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. *See, e.g., Paterson–Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.,* 838 F.2d 55 (2d Cir.1988).

The parties are reminded that. pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 72.3(a)(3). or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.*

**SO ORDERED.**