[Cite as *Discovery Resources, Inc. v. Ernst & Young U.S. L.L.P.*, 2016-Ohio-1283.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | |
|---|---|
| DISCOVERY RESOURCES, INC. | C.A. No. 15CA010723 |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| ERNST & YOUNG U.S. LLP, et al. | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellees | CASE No. 14CV183094 |

DECISION AND JOURNAL ENTRY

Dated: March 28, 2016

HENSAL, Judge.

{¶1} Appellant, Discovery Resources, Inc., appeals from a judgment of the Lorain County Court of Common Pleas, adopting the Magistrate's decision and granting Appellees', Ernst & Young U.S. LLP and Scherzer International Corp., motion to compel arbitration and to stay the proceedings. For the following reasons, we affirm.

I.

{¶2} Appellant, Discovery Resources, Inc. ("DRI"), and Appellee, Ernst & Young U.S. LLP ("E&Y"),[1] entered into a Services Agreement in September 2006 wherein DRI agreed to provide certain investigatory services to E&Y. Relevant to this appeal, the Services Agreement contained an arbitration provision requiring mediation or arbitration for "[a]ny dispute or claim between the parties arising out of or relating to the Services or this Agreement[.]" It also

---

[1] This Court will refer to both Ernst & Young U.S. LLP and Ernst & Young LLP as "E&Y" given the parties' prior agreement that references to one would be deemed a reference to the other.

contained a delegation provision, which provided that "[a]ny issue concerning the extent to which any dispute is subject to arbitration * * * shall be governed by the Federal Arbitration Act and resolved by the arbitrators."

{¶3} In 2011, E&Y informed DRI that E&Y would no longer send business to DRI. In January 2012, however, the parties extended the Services Agreement through December 31, 2012, and E&Y continued to send DRI business. There is no dispute that nothing obligated E&Y to request DRI's services and, correspondingly, nothing obligated DRI to provide its services to E&Y. The Services Agreement terminated by its own terms on December 31, 2012.

{¶4} E&Y eventually began using the investigatory services of Appellee Scherzer International Corp. ("Scherzer"), a competitor of DRI. Notwithstanding the arbitration provision contained in the Services Agreement, DRI filed a complaint against E&Y and Scherzer in the United States District Court for the Northern District of Ohio, Eastern Division, asserting claims for tortious interference, civil conspiracy, misappropriation of trade secrets, unjust enrichment, conversion, and unfair business practices. DRI subsequently voluntarily dismissed its federal-court action, conceding that the court lacked jurisdiction.

{¶5} The following month, DRI filed a complaint against E&Y and Scherzer in the Lorain County Court of Common Pleas, asserting the same claims. Five months later, DRI filed an amended complaint wherein it withdrew its claims for conversion, misappropriation of trade secrets, and unjust enrichment. In summary, DRI's amended complaint alleged that E&Y and Scherzer conspired with each other to put DRI out of business in order to benefit Scherzer.

{¶6} Shortly after DRI filed its original complaint, E&Y filed a motion under the Federal Arbitration Act ("FAA"), 9 U.S.C. 1 et seq., to compel arbitration pursuant to the Services Agreement, and to stay the proceedings. In the alternative, it moved the trial court to

dismiss the complaint. That same day, Scherzer joined E&Y's motion, requesting that the trial court either compel arbitration, or dismiss DRI's complaint.

{¶7} DRI filed a brief in opposition to Appellees' motions, arguing that: (1) the Services Agreement is illusory and, therefore, unenforceable; (2) it is for a court, not the arbitrators, to decide whether the Services Agreement is illusory; (3) even if the Services Agreement is enforceable, its claims are not arbitrable because they are outside the scope of the arbitration provision; and (4) its claims against Scherzer – a non-signatory to the Services Agreement – are not subject to arbitration. After a hearing on the matter, the Magistrate issued his decision, concluding that: (1) the arbitrators, not the court, must decide the issues of enforceability and arbitrability in light of the arbitration and delegation clauses contained in the Services Agreement; (2) even if the delegation clause had not made the issue of arbitrability an issue for the arbitrators, DRI's claims fall within the broad scope of the arbitration clause and, therefore, must be arbitrated; (3) even if the delegation clause had not designated the issue of enforceability as an issue for the arbitrators, the Services Agreement is enforceable and, therefore, DRI's claims must be arbitrated; (4) the Services Agreement is not illusory and, at any rate, illusoriness is an issue for the arbitrators; and (5) DRI must arbitrate its claims against Scherzer given DRI's allegation of conspiracy. The Magistrate, therefore, recommended that the trial court grant Appellees' motion to compel arbitration and to stay the proceedings.

{¶8} DRI filed objections to the Magistrate's decision, which the trial court rejected because DRI failed to submit a transcript of the proceedings before the Magistrate in accordance with Civil Rule 53(D)(3)(b)(iii). It, therefore, accepted the Magistrate's findings of fact and limited its review to the Magistrate's conclusions of law based upon those facts. After conducting an independent review of the Magistrate's conclusions of law, the trial court adopted

the Magistrate's decision and granted Appellees' motion to compel arbitration and to stay the proceedings. DRI has appealed, raising four assignments of error for our review. For ease of consideration, we have combined DRI's second and third assignments of error.

## II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AS A MATTER OF LAW BY HOLDING THAT EXHIBIT 1 WAS NOT AN ILLUSORY AGREEMENT.

{¶9} In its first assignment of error, DRI argues that the trial court erred by finding that the Services Agreement is not illusory. Appellees, on the other hand, argue that the trial court properly found that the validity of the Services Agreement is an issue for the arbitrators, not the court, to decide. In the alternative, they argue that even if the validity of the Services Agreement is an issue for the court, the trial court properly found that the agreement is not illusory.

{¶10} Generally, "[w]e review a trial court's decision to stay proceedings and order the matter to arbitration for an abuse of discretion." *Koch v. Keystone Pointe Health & Rehab.*, 9th Dist. Lorain No. 11CA010081, 2012-Ohio-5817, ¶ 7. "That standard of review[, however,] must yield when an issue of law is implicated." *Id.* To the extent that DRI challenges the trial court's conclusions of law, we apply a de novo standard of review. *Morris v. Andros*, 9th Dist. Summit Nos. 21861, 21867, 2004-Ohio-4446, ¶ 18.

{¶11} Before compelling arbitration under the FAA, courts must determine: (1) whether a valid agreement to arbitrate exists; and (2) whether the disputed issue falls within the substantive scope of that agreement. *Javitch v. First Union Secs., Inc.*, 315 F.3d 619, 624 (6th Cir.2003), citing *AT&T Technologies, Inc. v. Communications Workers of Am.,* 475 U.S. 643, 649 (1986). DRI's first assignment of error relates to the first prong of this test, that is, the validity of the agreement.

{¶12} The Supreme Court has held that there are two types of validity challenges under the FAA: (1) a challenge to the agreement as a whole; and (2) a challenge to the agreement to arbitrate. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010). Importantly, "a challenge to the validity of a contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006).

{¶13} As the Magistrate's decision points out, "DRI never argued that the arbitration or delegation clauses in the Services Agreement themselves are unenforceable." Instead, it argued below that the Services Agreement itself is illusory and, therefore, unenforceable. Thus, under Supreme Court precedent, the validity of the agreement as a whole is an issue for the arbitrators to decide, and the trial court did not err in reaching this conclusion. *Cardegna*, 546 U.S. at 449. To the extent that DRI challenges the validity of the arbitration and delegation provisions on appeal, we decline to address its arguments because they were not raised below. *State v. Schwarz*, 9th Dist. Medina No. 02CA0042-M, 2003-Ohio-1294, ¶ 14, citing *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 279 (1993) ("Courts have consistently held that arguments which are not raised below may not be considered for the first time on appeal."). Additionally, we decline to address DRI's argument regarding the trial court's alternative ruling that the Services Agreement is not illusory given our determination that the validity of the Services Agreement is an issue for the arbitrators to decide. Accordingly, DRI's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY HOLDING AS A MATTER OF LAW THAT THE ARBITRABILITY OF APPELLANT'S CLAIMS WAS AN ISSUE TO BE DECIDED BY AN ARBITRATOR.

ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN COMPELLING ARBITRATION OF APPELLANT'S AMENDED COMPLAINT EVEN THOUGH THE ALLEGATIONS IN THE AMENDED COMPLAINT DO NOT RELATE IN ANY WAY TO EXHIBIT 1 OR THE SERVICES PROVIDED UNDER EXHIBIT 1.

**{¶14}** In summary, DRI's second and third assignments of error challenge the trial court's findings regarding the arbitrability of the claims DRI asserted in its amended complaint. More specifically, in its second assignment of error, DRI argues that the trial court erred by holding that the arbitrability of its claims was an issue for the arbitrators to decide. In its third assignment of error, DRI argues that the trial court erred by compelling arbitration because its claims do not relate to the Services Agreement.

**{¶15}** Regarding DRI's second assignment of error, Appellees argue that the Services Agreement expressly provides that issues concerning the arbitrability of claims shall be governed by the FAA and resolved by the arbitrators. Regarding DRI's third assignment of error, Appellees argue that if the arbitrability of DRI's claims is an issue for the court, then the trial court properly found that DRI's claims fall within the broad scope of the arbitration clause.

**{¶16}** The FAA embodies a "liberal federal policy favoring arbitration," and "reflects the overarching principle that arbitration is a matter of contract." (Citation omitted.) *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *Am. Express Co. v. Italian Colors Restaurant*, ___ U.S. ___, 133 S.Ct. 2304, 2309 (2013). Courts, therefore, "must 'rigorously enforce' arbitration agreements according to their terms[.]" *Italian Colors Restaurant*, 133 S.Ct.

at 2309, quoting *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 221 (1985). "When deciding whether the parties agreed to arbitrate [the issue of arbitrability], courts generally * * * should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Here, the Services Agreement provides that it is to be governed by, and construed in accordance with, the laws of the State of New York.

{¶17} We will first address DRI's argument that the trial court erred by holding that the arbitrability of its claims was an issue for the arbitrators to decide. The Supreme Court has stated that "the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." (Citation omitted.) *Id.* at 943. "Unless the parties *clearly* and *unmistakably* provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." (Emphasis added.) *AT&T Technologies, Inc.*, 475 U.S. at 649.

{¶18} Given the choice-of-law provision contained in the Services Agreement, we apply New York contract law principles to the issue of whether the Services Agreement "clearly and unmistakably" provides that the arbitrators shall decide the issue of arbitrability. *See PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198-99 (2d Cir.1996), citing *Kaplan*, 514 U.S. at 944 (stating that "the arbitrability of a given issue is a question for the court *unless* there is 'clear and unmistakable' evidence from the arbitration agreement, *as construed by the relevant state law*, that the parties intended that the question of arbitrability shall be decided by the arbitrator.") (Second emphasis added.).

{¶19} Under New York law, "[w]ords and phrases [in an agreement] are given their plain meaning" and, "[r]ather than rewrite an unambiguous agreement, a court should enforce the plain meaning of that agreement[.]" *Am. Express Bank Ltd. v. Uniroyal, Inc.*, 562 N.Y.S.2d 613,

614 (1990). "Exhibit E" to the Services Agreement provides that "[a]ny issue concerning the extent to which any dispute is subject to arbitration * * * shall be governed by the Federal Arbitration Act and resolved by the arbitrators." Guided by New York contract law principles, we find that this language "clearly and unmistakably" provides that the arbitrators shall decide the issue of arbitrability. *See Bybyk*, 81 F.3d at 1196 (applying New York contract law and stating that a provision indicating that "any and all controversies" shall be submitted to arbitration "evince[d] the parties' intent to submit issues of arbitrability to the arbitrators."); *In re Liverpool Pub. Library*, 899 N.Y.S.2d 707, 708 (2010) (provision stating that an arbitrator shall rule on the question of arbitrability evidenced a "clear and unmistakable" agreement to arbitrate arbitrability); *see also Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]").

**{¶20}** We, therefore, find no merit in DRI's claim that the trial court erred by holding that the arbitrability of its claims was an issue for the arbitrators to decide. Because arbitrability is an issue for the arbitrators to decide, we decline to address DRI's third assignment of error wherein it argues that its claims do not fall within the scope of the arbitration provision. *See* App.R. 12(A)(1)(c). Accordingly, DRI's second and third assignments of error are overruled.

ASSIGNMENT OF ERROR IV

> THE TRIAL COURT [ERRED] AS A MATTER OF LAW WHEN IT ORDERED APPELLANT'S CLAIMS AGAINST SCHERZER STAYED PENDING ARBITRATION EVEN THOUGH NO ARBITRATION AGREEMENT EXISTS BETWEEN DRI AND SCHERZER.

**{¶21}** In its fourth assignment of error, DRI argues that, regardless of whether this Court finds that DRI's claims against E&Y are subject to arbitration, the trial court erred by staying its claims against Scherzer. In support of its argument, DRI asserts that there is no arbitration

agreement between DRI and Scherzer, and that neither DRI nor Scherzer can be compelled to arbitrate absent an agreement to do so. Further, DRI argues that E&Y is not a necessary or indispensable party to DRI's claims against Scherzer.

{¶22} In response, Appellees argue that DRI's claims against them are interdependent and that an arbitration clause may be enforced for claims against non-signatories under the doctrine of equitable estoppel. Further, Appellees argue that DRI cannot separately pursue its claims against Scherzer because E&Y is a necessary and indispensable party to those claims.

{¶23} As the Magistrate's decision notes, the "application of equitable estoppel is warranted . . . when the signatory [to the contract containing the arbitration clause] raises allegations of . . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." (Internal quotations and citations omitted.) *Liedtke v. Frank*, 437 F.Supp.2d 696, 699 (N.D.Ohio 2006); *see Javitch*, 315 F.3d at 629 (noting that non-signatories may be compelled to arbitrate under the doctrine of estoppel). In its merit brief, DRI summarized its claims against Appellees as follows: "In the simplest of terms, E&Y and [Scherzer] conspired with each other to put DRI out of business." There can be no question that DRI's claim for conspiracy "raises allegations of . . . substantially interdependent and concerted misconduct" between E&Y and Scherzer. *Liedtke* at 699; *Kruse v. AFLAC Intern., Inc.*, 458 F.Supp.2d 375, 383 (E.D.Ky.2006) ("Where a party alleges that a nonsignatory engaged in a conspiracy with a signatory, the nonsignatory may compel arbitration."). We, therefore, hold that the trial court did not err by staying DRI's claims against Scherzer. Accordingly, DRI's fourth assignment of error is overruled.

III.

**{¶24}** Discovery Resources, Inc.'s assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

SCHAFER, J.
CANNON, J.
CONCUR.

(Cannon, J., of the Eleventh District Court of Appeals, sitting by assignment.)

APPEARANCES:

TIMOTHY A. SHIMKO, Attorney at Law, for Appellant.

DONALD S. SCHERZER and AMANDA M. KNAPP, Attorneys at Law, for Appellee.

DAVID A. SCHAEFER, Attorney at Law, for Appellee.

STANLEY J. PARZEN, Attorney at law, for Appellee.