[882 NYS2d 34]

P.J.P. Mechanical Corp., Appellant, v Commerce and Industry Insurance Company, Respondent.

First Department, June 18, 2009

## APPEARANCES OF COUNSEL

*Arthur J. Semetis, P.C.*, New York City (*Arthur J. Semetis* and *Shannon P. Gallagher* of counsel), for appellant.

*Law Offices of Green & Lavelle*, Brooklyn (*William J. Cleary* and *Martin P. Lavelle* of counsel), for respondent.

### OPINION OF THE COURT

SWEENY, J.

This case involves the extent of an insurer's duty to defend under the terms of its policy. Specifically, does an insurer have a duty either to fund or to reimburse for separate litigation commenced by its insured, where the responsive pleadings raise an affirmative defense based on a claim of offset? For the following reasons, we hold that it does not.

Plaintiff was insured under a commercial general liability policy issued by defendant. It entered into a contract with Cauldwell, a general contractor, to perform heating and ventilation work in a building leased by JPMorgan Chase Bank. Plaintiff subcontracted out part of its work to Penava Mechanical Corp. On November 30, 2001, a pipe separated from a water riser, causing damage to the building in excess of $500,000. Cauldwell immediately advised plaintiff and Penava that it considered them solely responsible for the property damage caused by the ruptured pipe.

Plaintiff, in turn, immediately notified defendant of Cauldwell's claim. Defendant conducted an investigation pursuant to the terms of its insurance policy and determined that preservation of the burst pipe was necessary in the event of litigation. Counsel was assigned to file a pre-suit motion to preserve the pipe. This counsel attended various meetings, inspections and tests conducted by the insurance carriers for the parties involved in this incident, with each taking differing positions on the question of liability. On December 14, 2001, Cauldwell's insurer filed a notice of claim against plaintiff. However, no litigation was commenced by any of the parties for damages resulting from the burst pipe incident.

Thereafter, Cauldwell advised plaintiff that it was withholding the contract balance of approximately $650,000 owed to plaintiff because of Cauldwell's position that plaintiff was solely

responsible for the property damage resulting from the ruptured pipe. Plaintiff requested defendant to assign counsel to defend it against Cauldwell's claim of negligence that resulted in the withholding of the contract balance. Defendant refused, taking the position that pursuant to the terms of the policy, Cauldwell's claim of negligence did not fall within the definition of a "claim" as defined in the insurance policy, as it was not a "suit, [or] a demand for injunctive or equitable relief."

In February 2003, plaintiff hired its own counsel and served an amended complaint* on Cauldwell, JPMorgan and others to recover the disputed contract balance. Cauldwell and the other named defendants joined issue, asserting three affirmative defenses. The only substantive affirmative defense was Cauldwell's claim of the right to offset any recovery based on damages sustained as a result of the negligence of plaintiff or its subcontractor.

In November 2004, plaintiff filed a second amended complaint against Cauldwell, JPMorgan and others. In their answer, Cauldwell and JPMorgan asserted counterclaims against plaintiff to recover for property damage caused by the alleged negligence of plaintiff or its subcontractors. Plaintiff again forwarded this answer to defendant and demanded a defense. At this point, defendant notified plaintiff that counsel would be assigned to represent it, but that such representation would be limited solely to the defense of Cauldwell's counterclaim for negligence. In exchanges of correspondence, plaintiff demanded that defendant also reimburse it for legal fees and expenses it incurred and would incur in connection with the prosecution of the underlying action to collect the contract balance. Defendant refused such demands, again taking the position that the policy only provided for the defense of covered claims, not claims for breach of contract, and that it would only pay for legal expenses incurred at its request.

In December 2005, plaintiff commenced this declaratory judgment action, alleging that defendant had a duty to pay all legal expenses and costs directly incurred by plaintiff in the underlying collection action. Defendant moved for summary judgment, arguing that Cauldwell's affirmative defense of negligence in the underlying collection action was not an "occurrence" as defined in the policy, which would trigger coverage. Defendant contended that once Cauldwell and JPMorgan, in response to

---

* The original complaint has not been made part of the record.

the second amended complaint, asserted counterclaims against plaintiff, it appointed counsel to represent plaintiff solely with respect to those counterclaims, while plaintiff's counsel continued to represent it in the collection action. Defendant further argued that since the collection action was ultimately settled for $930,000, plaintiff's demand for reimbursement of legal costs incurred in connection therewith did not constitute a claim for property damage or bodily injury as defined in the policy, and defendant thus was under no obligation to pay those sums.

Plaintiff cross-moved for summary judgment, arguing that the policy did not differentiate among a pre-suit claim of negligence, an affirmative defense of negligence, and a counterclaim for negligence with respect to the insured's duty to defend. Plaintiff contended that although defendant maintained it could take no action as the matter was not in suit, it should have done a more extensive investigation and settled the claim resulting from the ruptured pipe.

Supreme Court held that the contract language of the policy controls. The policy definitions, when read in conjunction with the entire policy, placed no obligation on defendant to defend plaintiff against an affirmative defense filed in response to an action, even though that affirmative defense was couched in terms of plaintiff's negligence. The court granted defendant's motion and denied plaintiff's cross motion.

Well-established principles governing the interpretation of insurance contracts provide that the unambiguous provisions of the policy must be given their plain and ordinary meaning (*Greater N.Y. Mut. Ins. Co. v United States Underwriters Ins. Co.*, 36 AD3d 441, 442 [2007]). This is a question of law for the court to determine (*Teitelbaum Holdings v Gold*, 48 NY2d 51, 56 [1979]; *Seaport Park Condominium v Greater N Y. Mut. Ins. Co.*, 39 AD3d 51, 54 [2007]). However, a court is not at liberty to "make or vary the contract of insurance to accomplish its notions of abstract justice or moral obligation" (*Breed v Insurance Co. of N. Am.*, 46 NY2d 351, 355 [1978]).

The policy in question provides:

> "We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury and property damage to which this insurance applies. We will have the right and duty to defend any suit seeking those damages. We may at our

discretion investigate any occurrence and settle any claim or suit that may result."

With respect to the burst pipe, it is clear that defendant did exercise its discretion to investigate the occurrence and closed its file after determining that plaintiff was not liable for any property damage. The policy does not require the insurer to defend any "occurrence" which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Additionally, there is nothing in the policy language that requires defendant to either prosecute affirmative claims or reimburse plaintiff for the fees paid its counsel for such affirmative claims (*see National City Bank v New York Cent. Mut. Fire Ins. Co.*, 6 AD3d 1116, 1117 [2004], *lv denied* 3 NY3d 605 [2004]; *Goldberg v American Home Assur. Co.*, 80 AD2d 409, 411-412 [1981]).

We find no ambiguity in the contract reference to "suit," which is defined as

"a civil proceeding in which damages to which this insurance applies are alleged. Suit includes:

"a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

"b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent."

The policy, when read as a whole, clearly states that defendant has the duty to defend a suit, which means a proceeding brought against the insured, not by the insured. "Defend," by its clear import, does not envision affirmative litigation.

The only remaining question is whether an affirmative defense based on offset in the collection action triggered the insurer's duty to defend a "suit." The motion court properly held that it did not.

Contrary to plaintiff's arguments, an affirmative defense is substantively different from a counterclaim. A counterclaim is a cause of action asserted by a defendant against a plaintiff (CPLR 3019 [a]). By its very nature, a counterclaim seeks affirmative relief.

Affirmative defenses, on the other hand, cannot seek such relief. Cauldwell could not obtain affirmative relief by asserting an offset defense. CPLR 3018 (b) requires an affirmative defense

to be raised in an answer for one of two reasons: (1) to prevent surprise against the adverse party, or (2) to raise issues of fact not appearing on the face of a prior pleading. The effect of a successful affirmative defense is the dismissal of a plaintiff's complaint or cause of action. It does not give the defendant any affirmative relief against a plaintiff, such as monetary damages.

When raised as an affirmative defense, Cauldwell's claim of plaintiff's negligence merely sought dismissal of the suit for the balance of the contract amount. When raised as a counterclaim, however, it effectively sought damages from plaintiff, thus triggering the insurer's duty to defend, which it did.

The distinctions between affirmative defenses and counterclaims set forth in CPLR 3018 (b) and 3019 (a) are not merely semantic; these are substantive differences. The distinction has been succinctly explained as follows:

> "facts pleaded which controvert the plaintiff's claim and serve merely to defeat it as a cause of action constitute a defense, and are inconsistent with the legal idea of a counterclaim, which is a separate and distinct cause of action. On the other hand, a claim that does not defeat the plaintiff's cause of action, but constitutes an independent cause of action for the defendant, should be pleaded as a counterclaim, and not as an affirmative defense." (84 NY Jur 2d, Pleading § 166.)

Significantly, if plaintiff believed that Cauldwell's defense was truly a counterclaim, the prudent action was to immediately move to strike the defense and force Cauldwell to replead the claim as a counterclaim. This would have triggered the insurer's duty to defend. Had these steps been taken in the instant action, defendant would have been forced to defend plaintiff at the beginning of the case, rather than when the counterclaim was voluntarily asserted by Cauldwell several months later.

There do not appear to be any New York cases addressing the issue of whether the assertion of a claim such as Cauldwell's offset claim, when pleaded as an affirmative defense, triggered the insurer's duty to defend. Plaintiff relies on *Construction Protective Servs. v TIG Specialty Ins. Co.* (29 Cal 4th 189, 57 P3d 372 [2002]) and argues that we should adopt the rationale therein. In that case, a security firm sued the insurance company that provided its comprehensive general liability policy, claiming the insurer breached its duty to defend and indemnify against a setoff claim. The setoff was asserted as an affirmative

defense in a lawsuit for unpaid services. The customer alleged that the security firm was legally responsible for fire damage at its construction site and thus was entitled to set those damages off against the amounts owed for security services. The trial court sustained the insurance company's demurrer without leave to amend, based on its conclusion that a liability insurer's duty to defend does not extend to affirmative defenses raised in response to a lawsuit initiated by the insured. Based solely on its Code of Civil Procedure, the California Supreme Court held that the trial court had erroneously sustained the demurrer, but it declined to address the question on the facts where the precise terms of the insurance policy were not before the court. In an action on a written contract, a plaintiff could, under California procedure, plead "the legal effect of the contract rather than its precise language," thus enabling the court to determine whether "a prima facie right to relief" had adequately been stated, notwithstanding the specific language of the contract (29 Cal 4th at 198-199, 57 P3d at 377).

Despite the omission of a copy of the insurance policy as an exhibit to the complaint, the court concluded that the allegations in the complaint were sufficient to allege that the setoff claim fell within the scope of the contractual obligation to defend against suits seeking damages, and left open the question whether the duty would extend to the setoff claim once the precise language of the policy was known.

We decline to follow this holding. Were we to adopt the reasoning of *Construction*, it would represent a dramatic change in long-established New York law, which mandates that unambiguous contract language controls. It would essentially eliminate our pleading distinctions between affirmative defenses and counterclaims by holding that how the setoff is pleaded does not control. While *Construction* recognized that a setoff is limited to defeating a plaintiff's claim in the same manner that an affirmative defense is so limited, it then went on to hold the effect of pleading a setoff defense is the same as if it were pleaded as a counterclaim, and thus, at least for the purposes of whether utilized defensively (as in an affirmative defense) or offensively (as in a counterclaim), there is no distinction between the two. In either case, an insurer would be mandated to assign counsel to defend the insured. This would impact the long-established business practices of insurers, and lead to uncertainty in the drafting of insurance contracts.

To ignore the clear language of an insurance policy and order a carrier to litigate an affirmative action chosen by the

policyholder based on a mere claim in a defendant's answer that the affirmative action somehow relates, however tenuously, to an occurrence or allegation of negligence on the part of the insured would run afoul of the rule enunciated in *Breed* (46 NY2d at 355). We see no reason to set aside long-standing precedent on this issue.

Accordingly, the judgment of the Supreme Court, New York County (Karla Moskowitz, J.), entered April 24, 2007, upon the parties' respective motions for summary judgment, declaring that defendant has no duty to pay the legal fees and other litigation expenses incurred by plaintiff in an underlying action plaintiff brought against the general contractor to recover the balance due under the subcontract, should be affirmed, without costs.

GONZALEZ, P.J., SAXE, RENWICK and DEGRASSE, JJ., concur.

Judgment, Supreme Court, New York County, entered April 24, 2007, affirmed, without costs.