David HESTER, an individual, Plaintiff,

v.

NAVIGATORS INSURANCE COMPANY, an Arizona corporation, Defendant.

No. 12 Civ. 4033(KBF).

United States District Court, S.D. New York.

Jan. 23, 2013.

Eugene Killian, Jr., Killian & Salisbury, P.C., Iselin, NJ, for Plaintiff and Defendant.

David Allan Gauntlett, James A. Lowe, Gauntlett & Associates, Irvine, CA, for Plaintiff.

Eric J. Voigt, Mound Cotton Wollan & Greengrass, New York, NY, for Defendant.

## MEMORANDUM DECISION & ORDER

KATHERINE B. FORREST, District Judge.

In American football the saying goes that the best offense is a good defense. This case asks whether the reverse is true. Even if the best defense were a good offense, however, the Court here decides that an insurer's duty to pay for an insured's litigation defense does not extend to paying for the insured's proactive lawsuits or other pre-litigation activities.

Plaintiff David Hester received a demand letter relating to his use of a certain trademark. He then proactively sued the entity that sent him the demand letter. He now moves for summary judgment that he is due the full amount of the attorneys' fees and litigation expenses incurred in that suit from his insurer, defendant Navigators Insurance Company ("Navigators"), However, and as more fully explained below, Navigators had no duty to defend Hester until Hester was faced with a counterclaim. Accordingly, Hester's motion is denied. But because the reasonableness of Navigators's apportionment of covered and non-covered expenses from the time Hester was faced with a counterclaim forward cannot be judged on the current record, the Court orders further briefing on that issue.

## BACKGROUND

The Court assumes the parties' familiarity with the facts of this case, and here recites only those facts relevant on this motion. The following facts are undisputed unless otherwise noted.

### Hester and Neverson

Hester is a television personality, made famous by the show "Storage Wars" on A & E Television Networks, LLC ("A & E"). (Statement of Material Facts in Support of Pl.'s Mot. for Summ. J. ("Pl.'s 56.1") ¶ 46.) As with many television personalities, Hester has a catch phrase. Hester's is the word "YUUUP!" Using that word, Hester bids in auctions for abandoned storage units. He also sells merchandise with "YUUUP!" on it. (Id.) On December 13, 2011, the United States Patent and Trademark Office issued Hester a registration for the trademark "YUUUP!" (Id. ¶ 23; Navigators' Response to Pl.'s Rule 56.1 Statement of Material Facts in Supper of Pl.'s Mot. for Summ. J. ("Def.'s 56.1") ¶ 23.)

Non-party Tremaine Neverson is a rap music performer. His catch phrase, which he uses during performances, is also "YUUUP!" And he also sells merchandise with "YUUUP!" on it. (Pl.'s 56.1 ¶ 45.)[1]

On September 2, 2011, lawyers for Neverson sent a letter to Hester and A & E with the subject line "CEASE AND DESIST REGARDING THE UNAUTHO-

---

1. Defendant disputes many of these facts concerning Hester and Neverson. (See Def.'s 56.1 ¶¶ 45–46.) They are included in this narrative for background purposes only and have no effect on the outcome of this motion.

RIZED USE OF A TRADEMARK." (Decl. of James A. Lowe dated Aug. 2, 2012 ("Lowe Decl.") Ex. 5 ("Cease & Desist Letter").) That letter states, in relevant part:

> Please be advised that our client has used the mark YUUUP! continuously since at least as early as July 2009
>
> . . . .
>
> Our client was surprised to learn that you have submitted an intent-to-use application . . . for the mark YUUUP! in connection with entertainment services . . . [and] are currently selling merchandise with our client's trademark YUU-UP! without our client's authorization. . . .
>
> Please be advised that our client intends to oppose the trademark application and considers any use of the YUUUP! trademark as a violation of his valuable state and federal rights. . . .
>
> [O]n behalf of our client, we demand that you (i) immediately cease and desist any . . . commercial exploitation of any merchandise bearing the YUUUP! trademark; (ii) refrain from using the YUUUP! trademark in any manner; (iii) abandon any ownership rights to the YUUUP! trademark by expressly abandoning the pending application; and (iv) provide us with an itemized statement of account for all compensation received
>
> . . . .
>
> If we do not receive your written assurance by September 9, 2011 that you intend to comply with the demands set forth above and settle our client's claims on terms satisfactory to our client, our client will have no alternative but to pursue the legal and equitable remedies available to him to protect and enforce his rights.

(Cease & Desist Letter at 1–2.)

No further contact occurred between Hester and Neverson until November 10, 2011. On that date, Hester preemptively sued Neverson seeking (1) a declaration that his use of YUUUP! did not infringe upon any of Neverson's rights; (2) damages for Neverson's alleged tortious interference with Hester's current and prospective relationships with A & E. (*See generally* Lowe Decl. Ex. 2; *Hester v. Neverson*, 11 Civ. 8163(KBF) (hereinafter the *"Hester* Action"), docket no. 1 (S.D.N.Y. Nov. 10, 2011).) Neverson moved to dismiss the damages counts, but before the Court ruled on that motion, on March 8, 2012, Hester amended his complaint to remove those counts. (*See generally* Lowe Decl. Ex. 3; *see also Hester* Action docket no. 14.) Then on April 2, 2012, Neverson answered Hester's first amended complaint, and counterclaimed for cancellation of the registration for Hester's "YUUUP!" trademark. (*See generally Hester* Action docket no. 23.) Hester answered Neverson's counterclaim on April 26, 2012. (*See Hester* Action docket no. 24.) Eventually, the *Hester* Action settled, and all claims were voluntarily dismissed with prejudice by both parties on June 21, 2012. (Pl.'s 56.1 ¶ 29; Def.'s 56.1 ¶ 29; *see also Hester* Action docket no. 28.)

### *Hester and Navigators*

Navigators sells, *inter alia*, liability insurance. Hester held an insurance policy with Navigators for Commercial General Liability Coverage. (*See* Lowe Decl. Ex. 1 (the "Policy") at unnumbered page 94.) In relevant part, the Policy provides that:

> We [Navigators] will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to

defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.... No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for....

(*Id.* at unnumbered page 99.) "Suit," in turn, is defined as:

[A] civil proceeding in which damages because of ... "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes [a]n arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or [a]ny other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

(*Id.* at unnumbered page 108.)[2]

As mentioned, Hester received the Cease & Desist Letter on September 2, 2011. On October 7, 2011, Hester's lawyers sent a "Notice of Claim" letter to Navigators. (Lowe Decl. Ex. 6.) The notice referenced the Cease & Desist Letter and was "given in the event that [Hester] may need to file a declaratory judgment action which we view as necessary as conduct conducted against liability since [Neverson] is seeking damages ...." (*Id.* at 1.) The letter concluded with a request that Navigators acknowledge its duty to defend and indemnify Hester. (*Id.* and 2.)

On November 9, 2011, Navigators responded to Hester's Notice of Claim. (Lowe Decl. Ex. 7.) Therein, Navigators denied it had any duties towards Hester at that time since no "suit"—as defined by the Policy—had been filed. (*Id.* at 1.) Navigators also reserved its right to decline coverage for any "preemptive declaratory relief action" Hester might being against Neverson. (*Id.* at 5.)

On November 11, Hester's lawyers again wrote Navigators this time noting that the time was ripe "to initiate a trademark infringement action ... rather than expose [Hester] to the potentiality of a suit being filed against him ...." (Lowe Decl. Ex. 8 at 2.) Thus, the letter stated, "we have just filed a declaratory relief action in the [S.D.N.Y.] ...." (*Id.*) The letter also referred to Hester's damages claims, describing them as "defensive," since they would "cause [Neverson] to withdraw [his] claims against [Hester]." (*Id.*) Navigators responded on December 1, stating that Hester's affirmative lawsuit was outside the scope of his coverage, but that should Hester become a defendant in a "suit," Navigators would then review coverage potential. (Lowe Decl. Ex. 9 at 2.)

As set forth above, Hester amended his complaint to remove his damages claims on March 8, 2012; and on April 2, 2012, Neverson counterclaimed against Hester. On April 3, Hester's lawyers wrote Navigators, "request[ing] a defense of [the] counterclaim." (Lowe Decl. Ex. 10 at 1.) On May 2, Navigators's lawyers responded by agreeing to provide such a defense. (Lowe Decl. Ex. 13 at 1.) Navigators's lawyers also proffered independent counsel to represent Hester for that defense, instead of Hester's local counsel. (*Id.* at 2.) Also on May 2, Hester's counsel informed

---

**2.** "Personal and advertising injury" includes, *inter alia.* "[t]he use of another's idea in your "advertisement"; [and] [i]nfringing upon another's copyright, trade dress or slogan in your 'advertisement.'" (Policy at unnumbered page 107.) An advertisement is "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." (*Id.* at unnumbered page 105.)

Navigators's counsel that he was "in the process of trying to settle" the *Hester* Action, and Navigators's counsel agreed Hester's counsel should continue in those efforts. (Pl.'s 56.1 ¶ 29; Def.'s 56.1 ¶ 29.) On May 10, Hester's counsel forwarded Navigators's counsel an invoice of all fees related to the *Hester* Action from April 2, 2012, through April 30, 2012. (Decl. of Eric J. Voigt dated Sept. 7, 2012 ("Voigt Decl.") Ex. B.). Navigators's counsel responded with a payment offer on May 14. (Decl. of Anne. D. O'Niell dated Sept. 6, 2012 ¶ 4.)

Apparently dissatisfied with this offer, Hester sued Navigators on May 21, 2012, seeking "damages consisting of all reasonable defense expenses incurred by Hester in defense of the [Neverson] counterclaim including those fees incurred that were 'conducted against liability' related to the [Neverson] counterclaim." [3] (*See* Voigt Decl. Ex. C at 12; *see also* First Amended Compl. at 12.) Hester then settled with Neverson on June 19, 2012. (Pl.'s 56.1 ¶ 29; Def.'s 56.1 ¶ 29.) On July 19, Navigator's counsel wrote Hester's counsel, sending a check for $28,850.66, representing fifty percent of Hester's Counsel's legal fees from April 2, 2012—the date of Neverson's counterclaim—to June 19, 2012—the date of the settlement. (Lowe Decl. Ex. 35 at 2.) [4] Hester, however, claims he is due approximately $195,000 in reimbursable legal fees, and here moves for summary judgment on that claim. (*See* Pl.'s 56.1 ¶¶ 76–78.)

## DISCUSSION

### *Legal Standard*

Summary judgment may not be granted unless the movant shows, based on admissible evidence in the record placed before the court, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In making a determination on summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." *Dickerson v. Napolitano,* 604 F.3d 732, 740 (2d Cir.2010).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue of material fact for trial. *Price v. Cushman & Wakefield, Inc.,* 808 F.Supp.2d 670, 685 (S.D.N.Y.2011); *see also Wright v. Goord,* 554 F.3d 255, 266 (2d Cir.2009). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines,* 593 F.3d 159, 166 (2d Cir.2010) (citations omitted): *see also Price,* 808 F.Supp.2d at 685 ("In seeking to show that there is a genuine issue of material fact for trial, the non-moving party cannot rely on mere allegations, denials, conjectures or conclusory statements, but must present affirmative and specific evidence showing that there is a genuine

---

**3.** *I.e.,* those fees related to the Cease & Desist Letter and the affirmative lawsuit.

**4.** Navigators chose to pay fifty percent of these fees because of the "reasonable assumption that fifty percent of the work performed

after the counterclaim was filed ... was necessary to the prosecution of Hester's affirmative claims against [Neverson]." (Lowe Decl. Ex. 35 at 2.)

issue for trial."). In addition, self-serving affidavits, sitting alone, are insufficient to create a triable issue of fact and defeat a motion for summary judgment. *See Bell-South Telecommc'ns, Inc. v. W.R. Grace & Co.-Conn.*, 77 F.3d 603, 615 (2d Cir.1996). Only disputes relating to material facts—*i.e.*, "facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

### Duty to Defend

■ The question before the Court is straightforward: When did Navigators's duty to defend Hester under the Policy arise? Hester argues it arose upon his receipt of Neverson's threatening Cease & Desist Letter, or at least when Hester filed his preemptive lawsuit against Neverson in what Hester believed would be the most effective manner of defending his rights in "YUUUP!" Navigators counters that it arose only when Neverson counterclaimed against Hester—in other words, only when Hester was facing a formal claim for damages in a civil proceeding before a court.

■ The Court begins, as it must, with the language of the Policy. The Policy, like any contract, must be interpreted according to the parties' intent. *Crane Co. v. Coltec Indus., Inc.*, 171 F.3d 733, 737 (2d Cir.1999) (citing *Am. Express Bank Ltd. v.*

*Uniroyal, Inc.*, 164 A.D.2d 275, 277, 562 N.Y.S.2d 613 (1st Dep't 1990)). That intent is derived "from the plain meaning of the language employed in the agreements," *id.* (quotation marks omitted), when the agreements are "read as a whole." *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 565 N.Y.S.2d 440, 566 N.E.2d 639, 642 (1990). Divining the parties' intent requires a court to "give full meaning and effect to all of [the contract's] provisions." *Katel Ltd. Liab. Co. v. AT & T Corp.*, 607 F.3d 60, 64 (2d Cir.2010) (quotation marks omitted). Courts must avoid "interpretations that render contract provisions meaningless or superfluous." *Manley v. AmBase Corp.*, 337 F.3d 237, 250 (2d Cir.2003). When the parties' intent is clear—*i.e.*, unambiguous—the contract "must be enforced according to the plain meaning of its terms." *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir.2011) (citing *South Rd. Assocs., LLC v. IBM*, 4 N.Y.3d 272, 793 N.Y.S.2d 835, 826 N.E.2d 806, 809 (2005)). Moreover, "[w]ell-established principles governing the interpretation of insurance contracts provide that the unambiguous provisions of the policy must be given their plain and ordinary meaning." *P.J.P. Mech. Corp. v. Commerce & Indus. Ins. Co.*, 65 A.D.3d 195, 198, 882 N.Y.S.2d 34 (1st Dep't 2009); *see U.S. Fidelity & Guaranty Co. v. Annunziata*, 67 N.Y.2d 229, 501 N.Y.S.2d 790, 492 N.E.2d 1206, 1207 (1986).[5]

The relevant Policy language is clear and unambiguous. It requires that Navigators "defend the insured against any 'suit' seeking [ ] damages." (Policy at unnumbered page 99.) A "suit" is a "civil

---

**5.** Although the parties brief the issues involved in this motion under both New York and California law, they agree that New York law should apply if no substantive conflict exists between the two sets of laws, and also

agree that no conflict exists. (Pl.'s Mem. at 10 ("No conflict of law exists on this issue so New York law should be applied."); Def.'s Opp'n at 6–12, 16; Pl.'s Reply at 1–2). Accordingly, the Court applies New York law.

proceeding in which damages … are alleged." (*Id.* at unnumbered page 108.) The Cease & Desist Letter, however, is not a "civil proceeding," and therefore not a "suit." Because the Policy requires defense of "the insured against any 'suit,'" and because the Cease & Desist Letter is not a "suit," Navigators was not obligated to begin any defense of Hester upon his receipt of the Cease & Desist Letter.

Nor did this result change upon Hester's filing of his declaratory judgment action. To be sure, that filing did begin a "civil proceeding." But Hester's declaratory judgment and damages claims, individually or together, were not a civil proceeding *against* Hester and seeking damages *from him.* Therefore, the Policy did not obligate Navigators to begin any defense of Hester when that suit was filed.

■■■ Hester seeks to avoid this simple reading of the clear Policy language by arguing that a "demand for damages is the equivalent of a 'suit' triggering an insurer's duty to defend" under New York law. (Pl.'s Mem. at 5.) However, the Court can find no authority for such a broad proposition and one that would rewrite unambiguous language in most every insurance contract. While the cases cited by Hester surely stand for the proposition that certain demand letters *can* trigger duty to defend obligations, none states a rule that private parties' threatening letters are "suits" for purposes of liability insurance. As the Second Circuit has summarized:

> [U]nder New York law, the insurer's duty to defend may be triggered by an administrative agency's demand letter that commences a formal proceeding against the insured, advising it that a public authority has assumed an adversarial posture toward it, and that disregard of the demands may result in the loss of substantial rights by the insured. But this duty will not be triggered

where an insured simply receives a letter inviting voluntary remediation.

*Texaco A/S (Denmark) v. Commercial Ins. Co. of Newark, NJ,* 160 F.3d 124, 130 (2d Cir.1998) (quotation marks, citation, and alterations omitted). Indeed, in the cases applying this rule an finding that a letter triggered a duty to defend, the courts are often faced with a series of increasingly hostile letters coming from the government. *See Avondale Indus., Inc. v. Travelers Indemnity Co.,* 887 F.2d 1200, 1202, 1206 (2d Cir.1989) (following "many private damage actions" related to allegedly tortious operations causing toxic pollution, letter from state environmental agency notifying insured of state's "intention to take immediate action … and to recover all costs of remediation," demanding documents, and threatening a penalty of $25,000 per day, sufficient to trigger duty to defend); *Carpentier v. Hanover Ins. Co.,* 248 A.D.2d 579, 580–81, 670 N.Y.S.2d 540 (2d Dep't 1998) (four letters, including letters "inform[ing] the plaintiffs of their potential liability and [seeking] voluntary action" insufficient to trigger obligation, but fifth "demanding payment of a large, specified sum" and threatening the filing of a lien was sufficient). Alternatively, a private party's demand letter can be sufficiently threatening to trigger duty to defend obligations if related to conduct for which an insured already faces class action lawsuits "around the country." *Hartog Rahal P'ship v. Am. Motorists Ins. Co.,* 359 F.Supp.2d 331, 332 (S.D.N.Y.2005).

These extreme situations, however, are not present in this case. Neverson sent Hester a single letter noting an "inten[t] to oppose" Hester's trademark application, stating a demand that Hester refrain from exploiting the trademark, and inviting Hester to settle Neverson's claims. (Cease & Desist Letter at 1–2.) But Hester faced no other threatened or actual

legal action related to "YUUUP!" And the record contains no additional communication—threatening or otherwise—from Neverson to Hester. Absent such exigencies, the Court will not, and indeed cannot, rewrite the plain terms of the Policy to cover Neverson's demand letter. *See P.J.P. Mech.*, 65 A.D.3d at 198, 882 N.Y.S.2d 34 ("[A] court is not at liberty to 'make or vary the contract of insurance to accomplish its notions of abstract justice or moral obligation.' ") (*quoting Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 413 N.Y.S.2d 352, 385 N.E.2d 1280, 1283 (1978)). The cases cited by Hester simply do not compel a result in which the Court rewrites unambiguous contract language.

Nor is there any authority for Hester's proactive "defensive" lawsuit to trigger Navigators's duty to defend. Indeed, the law is just the opposite. *See P.J.P. Mech.*, 65 A.D.3d at 199, 882 N.Y.S.2d 34 (outside of litigation, general contractor withheld payment from subcontractor due to subcontractor's alleged negligence; subcontractor's insurance company not required to pay for expenses of subcontractor's subsequent affirmative lawsuit against general contractor for payment balance because in duty to defend, "[d]efend, by its clear import, does not envision affirmative litigation.")[6] The cases cited by Hester do not undermine this rule. *See Smart Style Indus., Inc. v. Penn. Gen. Ins. Co.*, 930 F.Supp. 159, 161–64 (S.D.N.Y.1996) (duty to defend began two weeks after defendant had asserted counterclaims);[7] *Ultra Coachbuilders, Inc. v. Gen. Sec. Ins. Co.*, 229 F.Supp.2d 284, 285–86, 289 (S.D.N.Y. 2002) (duty to defend included paying for fees incurred in asserting counterclaims in lawsuit against the insured); *see also Ultra Coachbuilders, Inc. v. Gen. Sec. Ins. Co.*, 02 Civ. 675, 2002 WL 31528474, at *1 (S.D.N.Y. July 15, 2002) (insured was defendant in underlying lawsuit). Accordingly, the Court will not—again, cannot—rewrite the Policy's language to cover Hester's proactive lawsuit, even if Hester describes that lawsuit as a "defensive" act designed to protect his trademark rights.

Finally, Hester's position, if correct, would conflate several terms of the Policy, rendering many obligations "mere surplusage"—an unacceptable result under New York law. *See Manley*, 337 F.3d at 250. First, it renders meaningless any distinction between "claim" and "suit." But the Policy uses these terms differently—insureds are required to notify Navigators of any "claim" as soon as practicable after the claim arises; Navigators may, at its discretion, investigate and settle "any claim or 'suit' "; and Navigators is obligated to defend an insured against any covered "suit." (Policy at unnumbered pages 23, 99.) A claim, then, is not the equivalent of a suit. The two create entirely different rights and obligations in both parties to the insurance contract.

---

**6.** *P.J.P. Mech. Corp.* provides further support for Navigators's position on this issue. In that case, the general contractor raised the subcontractor's negligence as an affirmative defense in the subcontractor's lawsuit for the payment balance. The First Department ruled that the subcontractor's insurance company's duty to defend did not extend to fighting that affirmative defense, even though the general contractor had originally accused the subcontractor of negligence outside of litigation. The First Department reasoned that fighting affirmative defenses could not be equated to fighting counterclaims, which would trigger the duty to defend. 65 A.D.3d at 199–201, 882 N.Y.S.2d 34. If opposing an affirmative defense does not trigger a duty to defend, then prosecuting an affirmative lawsuit certainly does not.

**7.** *Smart Style* is not on point: The duty to defend timing issue in that case had to do with the sufficiency of plaintiffs notice to its insurance company. 930 F.Supp. at 163–64.

■ Indeed, the law on the insured's duty to provide notice of a claim is different and distinct from the law on the insurer's duty to provide defense of a suit—a point made by Hester in his brief. (*See* Pl.'s Mem. at 6.) Hester argues that since an insured's failure in its obligation to provide notice of a claim can lead to a loss of insurance benefits, insurance companies must have "a reciprocal obligation to promptly defend the claim." (*Id.*) But this is not the law. And the distinction between notice of a claim and defense of a suit for damages is precisely the point. Provision of notice of a claim triggers the insurance company's obligation to *investigate* the claim, not to *defend* or reimburse funds for any and all actions the insured takes in response to the claim. The notice is just what it is called—it puts the insurance company on notice that it *might* have to defend a suit in the future. Hester's conflation of "claim" and "suit" would require insurance companies, and the Court should it rule for Hester, to know the future—to assume the existence of the possible, and perhaps probable, future event of a lawsuit for damages being filed. But no one can know the future.

For all these reasons, Navigators was not under any duty to defend upon Hester's receipt of Neverson's Cease & Desist Letter, or upon Hester's initiation of his lawsuit against Neverson. That duty arose upon Neverson asserting his counterclaim against Hester. Accordingly, Hester's motion for summary judgment on this issue is denied.

### Allocation of Fees and Expenses

Making its own calculations, Navigators paid fifty percent of Hester's attorneys fees billed by one of Hester's two law firms, and fifty percent of Hester's litigation costs, from the date Neverson filed his counterclaim until the date the counterclaim was dismissed. (Pl.'s 56.1 ¶ 34; Def.'s 56.1 ¶ 34; Def.'s Opp'n at 23.) Navigators argues that this allocation and payment represents the "reasonable assumption that fifty percent of the work performed following the filing of the counterclaim was necessary to the defense of [Hester] against that counterclaim." (Def.'s Opp'n at 1; *see also id.* at 23–27.)

■ Navigators, however, cites no authority permitting this kind of arbitrary allocation. It is true that the law concerning an insurer's duty to indemnify litigation expenses permits the insurer "to differentiate between covered and non-covered claims." *Fed. Ins. Co. v. Kozlowski,* 18 A.D.3d 33, 41, 792 N.Y.S.2d 397 (1st Dep't 2005). But on this record, the Court cannot rule that a fifty-fifty split of expenses incurred after Neverson filed his counterclaim represents a reasonable apportionment. Instead, the Court must receive further briefing from the parties concerning the reasonable amounts expended by Hester's lawyers, after and including April 2, 2012, in their defense against Neverson's counterclaim to cancel Hester's "YUUUP!" trademark.

### CONCLUSION

For the reasons set forth above, Hester's motion for summary judgment is DENIED.

Hester is not entitled to reimbursement of fees and expenses incurred in the *Hester* Action prior to April 2, 2012, the date Neverson filed his counterclaim against Hester.

On this record, however, the Court cannot determine the reasonableness of Navigators's payment of $28,850.66 to Hester, representing fifty percent of expenses incurred after and including April 2, 2012. The parties are accordingly ORDERED to submit briefing on the reasonableness of that amount, and/or the proper amount

due Hester from Navigators. Considering that some discovery might be required, the parties shall submit cross summary judgment briefs on these issues no later than **February 7, 2013,** with opposition briefs due on **February 21, 2013.**

The Clerk of the Court is directed to terminate the motion at docket no. 26.

SO ORDERED.