Franklin First Financial, Ltd., Petitioner,

against
Contour Mortgage Corporation, GREGORY M. BORK, AND ARTHUR W. MOST II, Respondents.


604159-15

WEINER BRODSKY KIDER PC
Attorneys for Plaintiff
1300 19th Street, N.W., Fifth Floor
Washington, D.C. 20036
LAW OFFICES OF RUSSELL E. ADLER PLLC
Attorneys for Defendants
78 Ridge Road
Katonah, New York 10536


Elizabeth H. Emerson, J.

Upon the following papers read on this motion and cross-motion for summary judgment ; Notice of Motion and supporting papers 102-130 ; Notice of Cross Motion and supporting papers 131-134 ; Answering Affidavits and supporting papers 135-138 ; [*2]Replying Affidavits and supporting papers 139;140 ; it is,
ORDERED that the motion by the plaintiff for summary judgment is granted solely to the extent of dismissing the third counterclaim; and it is further
ORDERED that the plaintiff's motion is otherwise denied; and it is further
ORDERED that the cross motion by the defendants Contour Mortgage Corporation and Arthur W. Most II for summary judgment is denied.
The plaintiff, Franklin First Financial, Ltd. ("Franklin First"), is a mortgage lender whose principal place of business is in New York. The defendant Arthur W. Most II ("Most") was Franklin First's Chief Financial Officer from June 1, 2010, until May 16, 2014. The defendant Gregory M. Bork ("Bork") was employed by Franklin First as a loan officer and branch manager from September 27, 2012, through March 26, 2015. The terms of their employment with Franklin First were governed by a series of agreements that prohibited them from disclosing Franklin First's confidential and proprietary information to third-parties and competitors and prohibited them from soliciting Franklin First's employees to leave its employ. Most and Bork went to work for the defendant Contour Mortgage Corporation ("Contour"), another mortgage lender and a direct competitor of Franklin First, after leaving Franklin First's employ. The plaintiff alleges that Most and Bork violated their employment agreements by misappropriating and using Franklin First's confidential and proprietary information to process loan applications at Contour and by soliciting Franklin First's employees to work at Contour. On April 6, 2015, Franklin First sent cease-and-desist letters to Most, Bork, and Contour, who responded by denying Franklin First's allegations. This action ensued. 
The complaint contained 13 causes of action to recover damages for misappropriation of trade secrets, breach of contract, breach of fiduciary duty, and unfair competition, among other things. By an order of this court dated September 24, 2015, the action was stayed insofar as asserted against Bork; the plaintiff and Bork were directed to proceed to arbitration, and the complaint was dismissed in part against Contour and Most. The defendants subsequently answered the complaint. Their answer contained two counterclaims by Most for breach of contract and quantum meruit, respectively. The plaintiff moved to dismiss Most's counterclaims, and the defendants cross-moved for leave to amend their answer to assert a third counterclaim for unjust enrichment. By an order of this court dated May 24, 2016, the plaintiff's motion to dismiss the counterclaims was denied, and the defendants' cross motion to amend the answer was denied as academic since the defendants amended their answer as of right while the motion to dismiss the counterclaims was pending. 
The plaintiff and Bork proceeded to arbitration. On May 5, 2017, the arbitrator issued a partial final award on the issue of liability. The arbitrator found that Bork had breached his employment agreement with the plaintiff by diverting loans from Franklin First to Contour. The arbitrator dismissed Franklin First's breach-of-fiduciary-duty claim against Bork, finding that it was questionable whether a fiduciary relationship existed. The arbitrator also found that the plaintiff owed Bork, inter alia, unpaid commissions. The parties submitted supplemental briefs to the arbitrator on the issue of damages. On August 28, 2017, the arbitrator issued his final award. The arbitrator found that Franklin First was entitled to damages for all loans that closed at Contour for which the first contact with the customer was before April 1, 2015, and that the total dollar value for the improperly transferred loans was $12,870,294. Applying a formula to [*3]calculate Franklin First's damages, the arbitrator awarded the plaintiff damages in the amount of $326,905.47. The arbitrator also awarded Bork damages in the amount of $121,478.24. When the damages to the plaintiff were offset by the amounts owed to Bork, the final award to the plaintiff was $205,427.23. The plaintiff moved to confirm the arbitrator's final award and for leave to enter a judgment thereon. The parties subsequently stipulated to confirm the award and to discontinue the action against Bork.[FN1]

Discovery is now complete, and the case is ready for trial. The plaintiff moves for summary judgment on the second cause of action for unjust enrichment against Contour and on the third cause of action for breach of contract against Most. The plaintiff moves for partial summary judgment on the issue of liability on the first cause of action for misappropriation of trade secrets against Contour, on the seventh cause of action for breach of fiduciary duty against Most, on the eleventh cause of action for aiding and abetting a breach of fiduciary duty against Contour and Most, and on the twelfth cause of action for unfair competition against Contour. The plaintiff also seeks summary judgment dismissing Most's counterclaims for breach of contract, quantum meruit, and unjust enrichment. Contour and Most cross move for summary judgment in their favor on the counterclaims and for dismissal of all of the plaintiff's claims.[FN2]

The court's main function on a motion for summary judgment is issue finding rather than issue determination (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404). Since summary judgment is a drastic remedy, it should not be granted when there is any doubt as to the existence of a triable issue (Rotuba Extruders, Inc. v Ceppos, 46 NY2d 223, 231). Thus, when the existence of an issue of fact is even arguable or debatable, summary judgment should be denied (Kuang v Board of Managers of the Biltmore Towers Condominium Assoc., 22 Misc 3d 854, 865 [and cases cited therein], affd 70 AD3d 1004). Summary judgment should also be denied when the proponent of the motion fails to tender sufficient evidence to eliminate any material issues of fact from the case (Winegrad v New York Univ. Med. Center, 64 NY2d 851, 853).
The Third Cause of Action for Breach of Contract against Most
The plaintiff contends that Most breached the Restrictive Covenant and Confidentiality Agreement dated June 1, 2010, between Most and Franklin First (the "Confidentiality Agreement") by taking and refusing to return over 100,000 computer files that contained Franklin First's Confidential Information. The Confidentiality Agreement defined "Confidential Information" as "financial reports and projections regarding the Corporation's business; agreements to which the Corporation is a party; agreements proposed by the Corporation, including sales proposals; information pertaining to the Corporation's properties and operations; [*4]the identity of the Corporation's customers and all computer hardware and software developed and/or licensed by the Corporation, as well as all systems documentation, manuals, and other materials developed and/or used in connection therewith . . . ." 
Pursuant to paragraph 3 (iii) of the Confidentiality Agreement, Most agreed to "deliver promptly to the Corporation after termination of employment or at any time the Corporation may so request, all documentation containing any of the Confidential Information, as well as all memoranda, notes, records, reports and other documents (and all copies thereof) relating to the business of the Corporation which he may possess or have under his control." In the event that Most failed, refused, or neglected to return all such items within five days, paragraph 3 (iv) provided as follows: 
[He] is subject to a per diem fine of $100.00 for the non-return of said items which fine it is agreed is a penalty. [He] will also be responsible for any and all actual damages incurred by the Corporation due to the loss, dissemination and/or non-return of said items.
The plaintiff seeks summary judgment on the third cause of action on the ground that there is no material dispute of fact that Most impermissibly retained Franklin First's Confidential Information from May 14, 2014, to May 19, 2016, a total of 671 days. The plaintiff, contends that, pursuant to paragraph 3 (iii) of the Confidentiality Agreement, Most owes Franklin First liquidated damages in the amount of $66,600.[FN3]
In opposition and in support of their cross motion, the defendants contend that the $66,600 in liquidated damages is a penalty and that Franklin First did not sustain any actual damages due to Most's retention of the hard drive because it only contained copies of Franklin First's files.
Preliminarily, the court notes that, contrary to the defendants' contentions, paragraph 3 (ii) of the Restrictive Covenant and Confidentiality Agreement provides that Most "will not make any copies or duplications of any Confidential Information and will not remove any copy or sample of Confidential Information from the premises of the company . . . ." Accordingly, it is not a defense that Most only kept copies of the Confidential Information on the hard drive. 
A contractual provision fixing damages in the event of a breach will be sustained if the amount liquidated bears a reasonable proportion to the probable loss and the amount of actual loss is incapable or difficult of precise estimation (Truck Rent-A-Center, Inc. v Puritan Farms 2nd Inc., 41 NY2d 420, 425). If, however, the amount fixed is plainly or grossly disproportionate to the probable loss, the provision calls for a penalty and will not be enforced (Id.). In interpreting a provision fixing damages, the agreement should be interpreted as of the date of its making and not as of the date of its breach (Id.). Moreover, it is not material that the parties themselves have chosen to call the provision one for "liquidated damages" or that they have styled it as a penalty (Id.). Whether a contractual provision represents an enforceable liquidation of damages or an unenforceable penalty is a question of law for the court to resolve (G-3 Purves Street, LLC v Thomson Purves, LLC, 101 AD3d 37, 41-42). The party seeking [*5]to avoid liquidated damages bears the ultimate burden of establishing that the clause is unenforceable (RES Exhibit Servs., LLC v Genesis Vision, Inc., 155 AD3d 1515, 1519).
The defendants have failed to meet their burden. As the party challenging the liquidated-damages clause, the defendants must demonstrate either that the damages flowing from the prospective breach were readily ascertainable at the time the parties entered into the Confidentiality Agreement or that the liquidated-damages clause is conspicuously disproportionate to the foreseeable or probable losses (Markham Gardens, L.P. v 511 9th , LLC, 143 AD3d 949, 952). The defendants have failed to demonstrate either. Their conclusory assertion that Franklin First did not sustain any actual damages is insufficient. Accordingly, the court declines to dismiss the third cause of action for breach of contract against Most.
The plaintiff has also failed to meet its burden. Paragraph 3 (iii) of the Confidentiality Agreement provides that, in addition to the $100 a day fine, Most is responsible for any and all actual damages incurred by Franklin First due to the loss, dissemination and/or non-return of its Confidential Information. Liquidated and actual damages are mutually exclusive remedies under New York law (U.S. Fidelity and Guar. Co. v Braspetro Oil Servs. Co., 369 F3d 34, 71 [2nd Cir]). Under no circumstances will liquidated damages be allowed where the contractual language and attendant circumstances show that the contract provides for the full recovery of actual damages (Id.). Accordingly, the court declines to award liquidated damages to the plaintiff as a matter of law.
The Seventh Cause of Action for Breach of Fiduciary Duty against Most
This cause of action is based on the same facts as the previous cause of action for breach of contract, i.e., Most's taking and refusing to return over 100,000 computer files that contained Franklin First's Confidential Information. The plaintiff seeks summary judgment on the issue of liability only. The defendants seek dismissal on the grounds that this cause of action is duplicative of the previous cause of action for breach of contract and that Franklin First did not suffer any damages as a result of Most's retention of the hard drive. 
In order to establish a prima-facie entitlement to breach of fiduciary duty, the plaintiff must prove, inter alia, damages directly caused by Most's alleged misconduct (see, Urtzman v Gergstol, 40 AD3d 588). The plaintiff is seeking punitive damages for Most's purported breach of fiduciary duty. Punitive damages, however, are only available when the fiduciary's breach is shown to have entailed an outrageous public wrong (Guardian Mtge. Acceptance Corp. v Bankers Trust Co. of Cal., 259 ADd2d 358). Such is not the case here. Moreover, the court finds that there are issues of fact as to whether Most's retention of Franklin First's computer files caused the plaintiff any actual damages. Accordingly, the court declines to award summary judgment to the plaintiff on the issue of liability. 
A cause of action alleging breach of fiduciary duty that is merely duplicative of a breach-of-contract claim cannot stand (Hylan Elec. Contr., Inc. v MasTec N. Am., Inc., 74 AD3d 1148, 1150). A breach-of-fiduciary claim should be dismissed when it is based on the same facts and seeks essentially identical damages as the breach-of-contract claim (Gawrych v Astoria Fed. Sav. & Loan, 148 AD3d 681, 684). Here, both claims are based on the same facts, but the damages are not the same. The plaintiff is seeking liquidated damages for Most's [*6]alleged breach of contract. The measure of damages for a breach of fiduciary duty is the amount of loss sustained, including lost opportunities for profit by reason of the fiduciary's faithless conduct (Herman v Herman, 162 AD3d 459, 460). Thus, even if the plaintiff recovers liquidated damages for breach of contract, it may also recover lost profits for breach of fiduciary duty. Accordingly, the court declines to dismiss the seventh cause of action for breach of fiduciary duty against Most.
The First Cause of Action for Misappropriation of Trade Secrets against Contour
This cause of action is based on Bork's diversion of loans from Franklin First to Contour. Bork was the manager of the plaintiff's Towson, Maryland, branch. Before leaving Franklin First's employ, he began sending Franklin First's customer files to Contour (the "Towson Pipeline"). The information in the Towson Pipeline included, inter alia, the identity of Franklin First customers with active loan applications, the identity of prospective Franklin First customers, individual loan files containing non-public consumer financial information, and other confidential data that are used to process a mortgage application. The plaintiff contends that the Towson Pipeline was a trade secret. Relying on the arbitrator's final award, the plaintiff contends that it is undisputed that Contour used the Towson Pipeline over a period of six weeks, misappropriating 55 loans and improperly profiting from them in the amount of $552,315.67.[FN4]

In opposition and in support of their cross motion, the defendants contend that the plaintiff was fully compensated for its losses in the arbitration between Bork and Franklin First. The defendants contend that the doctrines of res judicata and collateral estoppel preclude Franklin First from relitigating its damages for the same loans for which it has already received compensation in the arbitration.
The doctrines of res judicata and collateral estoppel are designed to put an end to a matter once it is duly decided (Eagle Surgical Supply, Inc. v AIG Indemnity Ins. Co., 40 Misc 3d 139(A) at *1). Res judicata, or claim preclusion, is invoked when a party, or those in privity with that party, seek to relitigate a disposition on the merits of claims or causes of action arising out of the same transaction or series of transactions that were raised, or could have been raised, in a prior litigation (Id. [and cases cited therein]). The doctrine of collateral estoppel, a narrower species of res judicata, precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party, or those in privity therewith (Ryan v New York Tel. Co., 62 NY2d 494, 500). For collateral estoppel to apply, the identical issue must have been decided in the prior action and must be decisive of the present action, and the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination (see, Kaufman v Lilly & Co., 65 NY2d 449, 455).
It is well settled that the doctrines of collateral estoppel and res judicata apply to arbitration awards with the same force and effect as they apply to judgments of courts (Lopez v Parke Rose Mgt. Sys., 138 AD2d 575, 577). However, when an issue not passed upon by an [*7]arbitrator is the subject of a subsequent action, the award is not a bar to that action (Id.). Since the consequences of a determination that a party is collaterally estopped from litigating a particular issue are great, strict requirements for application of the doctrine must be satisfied to insure that a party not be precluded from obtaining at least one full hearing on his or her claim (North Shore-Long Is. Jewish Health Sys., Inc. v Aetna US Healthcare, Inc., 27 AD3d 439, 440). Preclusive effect will not be given if the particular issue was not actually litigated, squarely addressed, and specifically decided (Id.).
The prior arbitration proceeding arose out of Franklin First's claims against Bork for breach of his employment agreement and breach of fiduciary duty and Bork's counterclaims for unpaid commissions and statutory violations. The issue of Contour's purported misappropriation of Franklin First's proprietary information or trade secrets was never actually litigated or decided in the arbitration proceeding. While the arbitrator determined that Bork sent Franklin First's loan files to Contour, he made no determination as to whether they contained proprietary information or trade secrets. Moreover, there are triable issues of fact as to whether the information contained in the Towson Pipeline was proprietary or a trade secret. Accordingly, the court declines to award summary judgment to either party on the first cause of action for misappropriation of trade secrets against Contour.
The Twelfth Cause of Action for Unfair Competition against Contour
This cause of action is also based on Contour's purported misappropriation of the Towson Pipeline. The gravamen of a claim of unfair competition is the bad-faith misappropriation of a commercial advantage belonging to another by infringement or dilution of a trademark or trade name or by exploitation of proprietary information or trade secrets (Eagle Comtronics v Pico Prods., 256 AD2d 1202, 1203). The plaintiff does not contend that Contour infringed or diluted a Franklin First trademark or trade name, and there are triable issues of fact as to whether or not the information contained in the Towson Pipeline was proprietary or a trade secret. Accordingly, the court declines to award summary judgment to either party on the twelfth cause of action for unfair competition against Contour.
The Second Cause of Action for Unjust Enrichment against Contour
This cause of action is also based on Contour's purported misappropriation of the Towson Pipeline.
Contrary to the plaintiff's contentions, the record does not establish as a matter of law that Contour was enriched by $552,315.67 from 55 misappropriated loans that should have closed at Franklin First. As previously noted, the arbitrator awarded Franklin First damages against Bork in the amount of $326,905.47, not $552.315.67. That figure does not appear anywhere in the final award. In fact, the $552,315.67 figure does not appear anywhere in the record. It does not even appear in Exhibit M, upon which the plaintiff relies. The plaintiff contends that Exhibit M was part of Bork's submission to the arbitrator on the issue of damages and that it shows the actual profit that Contour made on each misappropriated loan. Contour, however, was not a party to the arbitration and did not have a full and fair opportunity to contest the evidence [*8]introduced thereat. Accordingly, the court declines to grant summary judgment to the plaintiff on the second cause of action for unjust enrichment. 
Contrary to the defendants' contentions, the record does not establish as a matter of law that Franklin First has already been compensated for all of its damages. The issue of Contour's liability to the plaintiff was not litigated or decided in the arbitration, which merely determined Bork's liability to the plaintiff and Bork's counterclaims. The plaintiff's tort and other claims against Contour were not addressed in the arbitration. The measure of damages for those claims may not be the same. Moreover, Franklin First's damages against Bork were offset by the amounts that Franklin First owed to Bork. Franklin First, therefore, was not fully compensated for its loss. Accordingly, the court declines to dismiss the second cause of action for unjust enrichment against Contour.
The Eleventh Cause of Action against Contour and Most for
Aiding and Abetting Bork's Breach of Fiduciary Duty
This cause of action is based on Bork's diversion of loans from Franklin First to Contour. The plaintiff seeks summary judgment on issue of liability only. While the plaintiff has presented evidence that Contour and Most were aware of, and may have even assisted Bork, the plaintiff has failed to establish that Bork owed a fiduciary duty to Franklin First. The court notes that the arbitrator dismissed Franklin First's breach-of-fiduciary-duty claim against Bork, finding that it was questionable whether a fiduciary relationship existed. Accordingly, the court declines to award summary judgment to the plaintiff on this cause of action. 
Except for a passing reference on page 10 of their brief, the defendants proffer no arguments in support of dismissal of this cause of action. It is well established that issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived (Lima v Hatsuhana of USA, Inc., US Dist Court, SDNY, Oct. 1, 1997, Furman, J. [2014 WL 177412] at *1). It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones (McPherson v Kelsey, 125 F3d 989, 995-996 [6th Cir]). The court finds that, in the absence of a more fully developed argument, the defendants have failed to establish their entitlement to dismissal of the eleventh cause of action for aiding and abetting Bork's breach of fiduciary duty. 
Most's First Counterclaim for Breach of Contract
This counterclaim is based on Franklin First's failure to pay bonus compensation to Most in accordance with the terms of Addendum No.1 to Most's employment agreement, which
provides, in pertinent part, as follows:
"Quarterly Bonus Structure*Yearly ProfitBonus
1 - 1.5 million per quarter$2,5004,000,00010,000
1.5 - 2.0 million per quarter$5,0006,000,00020,000
2.0 - 2.5 million per quarter$7,5008,000,00030,000
2.5 - 3.0 million per quarter$10,00010,000,00040,000
in excess of 3.0 million per quarter$15,00012,000,00060,000
* * *
The profit will be determined by a modified cash basis that will be agreed upon within 30 days of each months end. Ultimately management has the sole right to determine profit.
*Add-back in owner compensation & owner incidental to arrive at quarterly profitability."
The plaintiff contends that dismissal of this counterclaim is required because there is no material dispute that Franklin First's yearly profits never exceeded the $4 million threshold that would trigger a bonus. The plaintiff contends that the add-backs only affected the quarterly bonuses and did not apply to the yearly bonus schedule. The plaintiff further contends that profit was never agreed upon and that management had the sole right to determine profit. In opposition and in support of their cross motion, the defendants contend that the $4 million threshold was never reached because Fred Assini, Franklin First's owner and president, vastly reduced Franklin First's profits by using corporate funds for personal expenses and by transferring loan-servicing rights to a company operated by his son.
It is well settled that a contract is to be construed in accordance with the parties' intent (MHR Capital Partners LP v Presstek, Inc., 12 NY3d 640, 645). The best evidence of what the parties intended is what they said in their writing (Greenfield v Phillies Records, Inc., 98 NY2d 562, 569). A written agreement that is complete, clear, and unambiguous on its face must be enforced according to the plain meaning of its terms (Id.), and the case is ripe for summary judgment (American Express Bank v Uniroyal, Inc., 164 AD2d 275, 277). A contract is unambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the agreement itself and concerning which there is no reasonable basis for a difference of opinion (Greenfield v Phillies Records, Inc., supra). If it is necessary to refer to extrinsic facts, which may be in conflict, to determine the intent of the parties, there is a question of fact, and summary judgment should be denied (American Express Bank v Uniroyal, Inc., supra).
The court finds that Addendum #1 is not a model of clarity as to how profits and bonuses were to be calculated and that it is necessary to refer to extrinsic facts to determine the parties' intent. The court also finds that the defendants' contention that the $4 million threshold was never reached because Assini vastly reduced Franklin First's profits merely raises an issue of fact as to whether the plaintiff breached the covenant of good faith and fair dealing that is implicit in all contracts. That covenant precludes a party from doing anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract (Dalton v Educational Testing Serv., 87 NY2d 384, 389). Accordingly, the court declines to grant summary judgment to either party on Most's first counterclaim for breach of contract. 
Most's Second Counterclaim for Quantum Meruit
Most seeks summary judgment on the issue of liability only. Most contends that he spent [*9]a significant amount time working on matters that were outside of the scope of his employment at Franklin First. Most contends that he provided services to Assini and to entities owned by Assini or Assini's son for which he received no compensation. The plaintiff seeks dismissal of this counterclaim on the grounds that Franklin First did not benefit from Most's services and that Most had no expectation of being compensated therefor.
Recovery under quantum meruit rests on a narrow exception to the rule that a party may not expect compensation for a benefit conferred gratuitously upon another (Umscheid v Simnacher, 106 AD2d 380, 382). To recover in quantum meruit, Most must establish (1) the performance of the services in good faith, (2) the acceptance of the services by the person to whom they were rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services (Id at 382-383). As a general rule, the performance and acceptance of services gives rise to the inference of an implied contract to pay for the reasonable value of such services (Moors v Hall, 143 AD2d 336, 338). However, if the services were performed at the behest of someone other than Franklin First, Most must look to that party for recovery (see, Recycling Contrs. Corp. v Town of Babylon, 302 AD2d 430, 431 [and cases cited therein]).
The court finds that there are triable issues of fact as to whether Most performed the services in question with an expectation that he would receive compensation therefor and whether Franklin First received any benefit from those services. Contrary to the plaintiff's contentions, Most may recover the reasonable value of his services whether or not Franklin First benefitted from his services in any economic sense (see Brennan Beer Gorman/Architects, LLP v Cappelli Enters., Inc., 85 AD3d 482, 483). Given that Assini was Franklin First's president and owner, it cannot be determined as a matter of law whether the services were performed at Assini's behest as an individual or as an officer of Franklin First. Moreover, the relationship between Franklin First and the entities for whom Most performed the services cannot be determined on the record presently before the court. Accordingly, the court declines to grant summary judgment to either party on Most's second counterclaim for quantum meruit.
Most's Third Counterclaim for Unjust Enrichment
The defendants do not present any arguments in support of their cross motion for summary judgment on this cause of action, nor do they oppose the branch of the plaintiff's motion which is for dismissal thereof. Accordingly, the court grants summary judgment to the plaintiff and dismisses the third counterclaim for unjust enrichment. 
Conclusion
The plaintiff's motion is granted solely to the extent of dismissing the third counterclaim. The defendants' cross motion is denied in its entirety. The parties are directed to proceed to trial on the remaining causes of action.
Dated: February 19, 2019
 
J.S.C.



Footnotes

Footnote 1:The stipulation was so-ordered by the court on November 16, 2017.

Footnote 2:The plaintiff does not move for summary judgment on the first cause of action for misappropriation of trade secrets insofar as it is asserted against Most, on the twelfth cause of action for unfair competition insofar as it is asserted against Most, and on the thirteenth cause of action for injunctive relief. Moreover, the defendant's papers make no mention of these claims. Accordingly, the court will not discuss them.

Footnote 3:Since the Confidentiality Agreement contains a five-day grace period, the plaintiff calculates the liquidated damages based on 666 days (671 minus 5).

Footnote 4:The court notes that the arbitrator found that Franklin First's damages were $326,905.47. The $552,315.67 figure does not appear anywhere in the final award.